Gerald SEALS, Beverly Seals; and Charles Travis Seals, a minor, By and Through his father and mother and next friends, Gerald and Beverly Seals, Plaintiffs,

v.

Don LOFTIS, Superintendent of Schools, Hamilton County Department of Education; Billy J. Edwards; Ruth G. Harmon; Linda Mines; James Monroe; Ronald O'Neal; Fred Skillern; John K. Witherspoon, Jr., members of the Board of Education; Dr. Robert L. McElrath, Commissioner Tennessee Department of Education, and Chairman State Board of Education, acting in their official capacity, Defendants.

Civ. No. 1–84–670.

United States District Court,
E.D. Tennessee, S.D.

July 22, 1985.

Addendum to Memorandum
Aug. 21, 1985.

Gloria Snavely, Effective Advocacy for Citizens With Handicaps, Inc., Knoxville, Tenn., for plaintiffs.

Ward Crutchfield, Neil Sutherland, Chattanooga, Tenn., Richard L. Colbert, Asst. Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

EDGAR, District Judge.

Gerald Travis Seals ("Travis") is a handicapped child within the meaning of the Education of All Handicapped Children Act, 20 U.S.C. § 1400, *et seq.* ("EAHCA"). Among Travis' problems are a seizure disorder, visual difficulty, and learning disabilities. The Hamilton County Department of Education ("Department") established for Travis an "individualized education program" as defined by 20 U.S.C. § 1401(19). He began his elementary schooling at Dallas Elementary School in Hamilton County, Tennessee.

In order to better deal with Travis' handicaps, the Department transferred Travis to Ganns Middle Valley Elementary School at the beginning of the 1983–84 school year. School personnel noted at that time that Travis' behavior had changed from what it had been in the spring of 1983 at the close of school. He was sometimes disoriented. His school performance had deteriorated. School personnel received information that Travis had suffered three grand mal seizures during the summer and had perhaps not been recently examined by a physician.

On September 26, 1983, the Department convened a multi-disciplinary team ("M Team") meeting to consider Travis' situation. After this meeting the M Team recommended to Travis' parents that he be evaluated medically by a pediatrician. The Department made this recommendation because it did not want to do anything which would affect Travis' education without first having a recent medical evaluation.

Acting on the recommendation of the Department's M Team, Travis' parents brought him to Dr. Richard E. Poehlein, a pediatrician of their own choice. Dr. Poeh-

lein referred Travis to Dr. Lawrence T. Ch'ien for a neurological evaluation. Upon completion of this evaluation, Dr. Ch'ien, along with Dr. Poehlein, referred Travis to Dr. William M. Hillner, a psychologist, for a psychological evaluation. While the M Team had not specifically requested the neurological and psychological evaluations, it is quite clear that Dr. Poehlein felt that both of those evaluations were necessary to help him ascertain the source of Travis' difficulties. It is also clear that the Department became aware of the evaluations by Drs. Ch'ien and Hillner, and made some use of a written report by Dr. Hillner in ascertaining Travis' special education needs. The neurological and psychological evaluations did not result in any changes in Travis' individualized education plan, but might have resulted in changes had the evaluations reached different conclusions.

When a dispute arose over whether the Department or Travis' parents were to pay for the evaluations done by Drs. Ch'ien and Hillner,[1] a "due process" hearing was convened before a hearing officer under the provisions of Tennessee Code Annotated § 49–10–601 and 20 U.S.C. § 1415(b)(2). The hearing officer concluded that the Department "pay the amount which is in excess of the cost born [sic] by the Seals' insurance for Travis' medical and neurological evaluation."

The facts surrounding the Seals' insurance coverage on Travis were not developed at the due process hearing. However, it has been established by stipulation of the parties in this case that:

(1) The total bill from Dr. Ch'ien for neurological evaluations was $265.00. The Seals' insurance carrier paid $79.20 of this amount.

(2) The total bill from Dr. Hillner for psychological evaluations was $247.00. The Seals' insurance carrier paid $99.70 of this amount.

(3) The payment of these benefits did not affect the Seals' insurance premium rates.

(4) The Seals had already satisfied their deductible amount of $100.00 on their coverage. Thus, no deductible amount was paid by them in relation to the matters involved in this case.

(5) The Seals' insurance policy carries a lifetime maximum of benefits for psychological services of $30,000.00. This amount has been reduced in the amount of $99.70, the amount of benefits paid to Dr. Hillner.

The Seals elected to bring this action pursuant to 20 U.S.C. § 1415(e)(2), seeking *inter alia* reimbursement of the insurance proceeds paid by the Seals insurer to Drs. Ch'ien and Hillner. The Seals contend that the hearing officer erroneously required them to use their insurance coverage to pay for the evaluations done by Drs. Ch'ien and Hillner. The Department contends that the hearing officer decided the insurance question properly, but erred in requiring the Department to pay the rest of the cost of these evaluations. This Court has, pursuant to 20 U.S.C. § 1415(e)(2), received the records of the administrative proceedings and has heard additional evidence at the request of the parties.

The questions which must be decided here are:

(1) Whether the evaluations by Drs. Ch'ien and Hillner are within the scope of aid which is to be provided the Seals pursuant to the EAHCA, and, if so,

(2) Whether the Seals can be required in this case to utilize the proceeds of their medical insurance to pay for the evaluations of Drs. Ch'ien and Hillner.

Addressing the first issue, it should first be noted that the EAHCA provides that state school systems which receive funding under the Act must have in effect a "policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The term "free appropriate public education" means:

---

1. The Seals do not seek payment for Dr. Poeh-    lein's charges.

... *special education* and *related services* which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under § 1414(a)(5) of this Title. (emphasis supplied)

20 U.S.C. § 1401(18).

The term "special education" as used in 20 U.S.C. § 1401(18), *supra,* is defined as:

... specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions.

20 U.S.C. § 1401(16).

The term "related services" as used in 20 U.S.C. § 1401(18), *supra,* is defined as:

... transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions and children.

20 U.S.C. § 1401(17).

■ The services rendered by Drs. Ch'ien and Hillner easily fit within the above definition of "related services." Dr. Hillner's services were "psychological services" and Dr. Ch'ien's services were medical services for "diagnostic and evaluation purposes." Travis' special medical and educational needs are intertwined here, and it is clear that both may be "related services" under the EAHCA. *See Irving Independent School District v. Tatro,* —— U.S. ——, 104 S.Ct. 3371, 3378-79, 82 L.Ed.2d 664 (1984); *see also Papacoda v. Connecticut,* 528 F.Supp. 68, 72 (D.Conn.1981); *T.G. v. Board of Education of Piscataway, New Jersey,* 576 F.Supp. 420, 423 (D.N.J. 1983).

It is apparent that these services were requested and required by the Department to assist Travis, in the words of 20 U.S.C. § 1401(17), "to benefit from special education." As such, they must be furnished to Travis by the Department pursuant to the EAHCA.[2]

■ The Seals seek reimbursement for their insurance carrier for the above amount. This Court has the power to order such reimbursement if such is in order. *Burlington School Committee v. Massachusetts Dept. of Education,* 471 U.S ——, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). There is little specific guidance from the EAHCA on this insurance reimbursement issue. On the one hand, the EAHCA requires the furnishing of a *free* appropriate public education to handicapped children. On the other hand, the United States Department of Education has promulgated a rather cryptic regulation which is found at 34 C.F.R. § 300.301(b) which provides:

Nothing in this part relieves an insurer or similar third party from an otherwise valid obligation to provide or to pay for services provided to a handicapped child.

■ The above regulation, being directed only at the obligations of insurers, does not deal directly with whether the Seals may be required to use their medical insurance for the services of Drs. Ch'ien and Hillner. Because of EAHCA's emphasis upon a *free* appropriate public education, this Court concludes that parents of a handicapped child cannot be required to utilize their private medical insurance benefits where

2. The Department contends that the services of Drs. Ch'ien and Hillner were beyond the scope of the M Team recommendation. Under the circumstances of this case the Court concludes to the contrary. However, this problem might have been avoided if the M Team had given the Seals clearer instructions at the outset.

the utilization of those benefits would cause them to incur a financial cost. *See* Interpretation of 34 C.F.R. § 104 and 300 at 45 Fed.Reg. 86,390 (1980). Any other conclusion would be inconsistent with the concept of a free appropriate public education which underlies the EAHCA.

■ This Court further holds that the Seals in this case did incur a cost with respect to the insurance payment to Dr. Hillner in that the payment reduced the lifetime benefits available to them under their policy. Defendants must therefore reimburse the Seals in the amount of Ninety Nine and 70/100 Dollars ($99.70).

■ Since the Seals' insurance payment to Dr. Ch'ien did not result in a "cost" to the Seals, the decision of the hearing officer, to the extent that it requires the Seals to use their insurance for this purpose, is affirmed.

An appropriate order will enter.

### ADDENDUM TO MEMORANDUM

This matter is now before the Court on plaintiff's motion pursuant to Federal Rule of Civil Procedure Rule 59(e) to modify the judgment previously entered in this case. In its judgment, the Court ordered that the defendants reimburse the plaintiffs in the amount of $99.70, the total amount which the parties had stipulated was paid by the plaintiffs' insurance carrier for Dr. Hillner's psychological services. This amount was awarded because this insurance payment reduced the lifetime benefits available to the plaintiffs for psychological services under their insurance coverage thus resulting in a "cost" to the plaintiffs inconsistent with the provisions of the EAHCA for a free appropriate education.

■ This Court also concluded, as apparently the hearing officer did, that the services provided by Drs. Ch'ien and Hillner were related services under the EAHCA. Accordingly, the hearing officer's decision is affirmed in this respect, and the plaintiffs are also entitled to reimbursement from the defendants for the amounts paid by the plaintiffs directly to Drs. Ch'ien and

Hillner except for any amount paid by the plaintiffs' insurance carrier to Dr. Ch'ien.

In summary, the Court calculates the entire amount of plaintiffs' recovery is as follows:

| | | |
|---|---|---|
| Amount paid by plaintiffs to Dr. Ch'ien of $265.00 less the $79.20 insurance payment to Dr. Ch'ien by plaintiffs' insurance carrier | = | $185.80 |
| Amount paid by plaintiffs directly to Dr. Hillner | = | + 147.30 |
| Amount paid by plaintiffs' insurance carrier to Dr. Hillner | = | + 99.70 |
| TOTAL | = | $432.80 |

The plaintiffs have submitted an affidavit in support of their motion which provides slightly different figures from those which have been previously stipulated by all the parties. The Court on the status of the record cannot alter the figures which have previously been stipulated. If indeed the actual figures are different from those which have been stipulated, the parties are encouraged to reach a mutual agreement upon those figures for the purpose of satisfying the modified judgment which will be entered in this case.

### MODIFIED JUDGMENT

In accordance with the memorandum filed herewith, it is ORDERED AND ADJUDGED that the defendants reimburse plaintiffs in the total amount of Four Hundred Thirty-Two and 80/100 Dollars ($432.80) and their costs of this action. This judgment shall replace the judgment entered by the Court on July 22, 1985.

IT IS SO ORDERED.