896 F.2d 808
 CHESTER COUNTY INTERMEDIATE UNIT, Lincoln Intermediate Unit,
Mr. and Mrs. John M. Gillespie, and Mr. and Mrs.
Kevin Nonemaker, Appellants,
v.
PENNSYLVANIA BLUE SHIELD and Capital Blue Cross.
 No. 89-5577.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 28, 1989.
Decided Feb. 28, 1990.
 
 Allen C. Warshaw (argued), Duane, Morris & Heckscher, Harrisburg, Pa., for appellants.
 Thomas E. Wood (argued) and Donna S. Weldon, Keefer, Wood, Allen & Rahal, Harrisburg, Pa., for appellee, Pennsylvania Blue Shield.
 Mary Jane Forbes (argued), McNees, Wallace & Nurick, Harrisburg, Pa., for appellee, Capital Blue Cross.
 Ernest N. Helling, Acting Chief Counsel and Debra R. Cruel, Asst. Counsel, Harrisburg, Pa., for amicus curiae, Pennsylvania Dept. of Educ.
 Before SLOVITER and BECKER, Circuit Judges, and LIFLAND, District Judge*.OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Introduction
 
 1
 The principal issue before us is whether the Education of the Handicapped Act (EHA or Act), 84 Stat. 175, as amended, 20 U.S.C. Secs. 1400 et seq., precludes companies offering medical and hospital insurance from excluding from coverage services provided free of charge under that Act. The parents of two handicapped children who received physical therapy as related services in conjunction with the mandated education required under the Act were covered by health insurance policies issued by defendants Capital Blue Cross and Pennsylvania Blue Shield (Blue Cross/Blue Shield). The intermediate educational units (IUs) which provided the physical therapy submitted bills to Blue Cross/Blue Shield for reimbursement, but Blue Cross/Blue Shield refused payment, relying on various contractual provisions. The parents and the IUs filed suit for a declaratory judgment. Defendants' motion to dismiss brought to issue the effect of the EHA on the obligation of Blue Cross/Blue Shield to reimburse subscribers or providers for certain services rendered pursuant to the Act. The district court dismissed the action, holding that the plaintiffs' claim was inconsistent with the reimbursement provisions of the applicable policy. The plaintiffs appeal.
 
 II.
 Facts and Procedural History
 
 2
 On review of an order dismissing the complaint, we must take as true all material facts as pleaded. Rogin v. Bensalem Township, 616 F.2d 680, 685 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).
 
 
 3
 Appellants Chester County Intermediate Unit (Chester IU) and Lincoln Intermediate Unit (Lincoln IU) are two of the twenty-nine area intermediate educational units formed as part of the Pennsylvania public school system. Appellants Mr. and Mrs. John Gillespie are the parents of a handicapped child, Todd, who was provided physical therapy by licensed physical therapists employed by or affiliated with Chester IU from October 5, 1987 through February 29, 1988. Appellants Mr. and Mrs. Kevin Nonemaker are the parents of a handicapped child, Kevin, who was provided physical therapy by licensed physical therapists employed by or affiliated with Lincoln IU from February 3, 1987 through November 4, 1987.
 
 
 4
 Both the Gillespies and the Nonemakers have policies with Pennsylvania Blue Shield and Capital Blue Cross covering their families' health care needs. The billing offices for the Chester and Lincoln IUs submitted the Nonemakers' and Gillespies' claims for payment to Blue Cross/Blue Shield. They apparently rely on the Major Medical benefits which supplement Blue Cross and Blue Shield basic coverage and provide coverage for, inter alia, "[p]hysical therapy prescribed by the attending provider as to type and duration when performed by a duly qualified physical therapist." Complaint at Exhibit A, App. at 63, and Exhibit B, App. at 121. The Gillespies and the Nonemakers attached the descriptive brochures they received covering such benefits to the complaint. The Major Medical provisions described in the two brochures are identical and, for convenience, we will refer to the document describing such benefits as the "policy."
 
 
 5
 When Blue Cross/Blue Shield disclaimed coverage, plaintiffs sought an administrative resolution of their claims. Both the Pennsylvania Insurance Department and the Pennsylvania Department of Education notified plaintiffs that they were not the appropriate fora to resolve the dispute. Plaintiffs then filed this suit as a class action in the district court. The complaint alleged that the Lincoln and Chester IUs were representatives of all IUs in Pennsylvania which provided special education and related services under the EHA and that the Nonemakers and Gillespies were representatives of all parents of handicapped children receiving special education and related services from licensed providers employed by or affiliated with Pennsylvania's IUs and who are covered by a Blue Cross/Blue Shield policy such as the one which covers the Nonemakers and Gillespies.
 
 
 6
 Blue Cross/Blue Shield filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). They argued that the provisions of the EHA requiring states to provide special education and related services to parents without charge and at public expense precluded shifting the costs of such services to those parents who carry health insurance. They also argued, inter alia, that the physical therapy services are not covered under any interpretation of the Blue Cross/Blue Shield Major Medical policy for several reasons. First, they contended that the policy covers only "medically necessary hospitalization and medical benefits," see App. at 60, and that notwithstanding the affidavits from the children's doctors stating that the physical therapy was medically necessary, see App. at 168-71, the physical therapy provided to the children would never have been prescribed by doctors but for the EHA. Second, Blue Cross/Blue Shield relied on the provision of the policy excluding coverage for services which the subscriber "is not legally obligated to pay" or which the subscriber is entitled to receive from a governmental unit or agency "without cost." Third, they relied on the reimbursement provisions of the policy, which they argued do not require them to make direct payment to a provider but only provide for reimbursement to the subscriber after submission of itemized bills and payment of the required deductible and coinsurance.
 
 
 7
 The district court dismissed the action. It stated, in agreement with plaintiffs' position, "that insurers are not relieved of contractual obligations they would otherwise have had had the [EHA] not been enacted." App. at 7 (emphasis in original). The court then examined the policy attached by plaintiffs to the complaint and held that as a matter of law Blue Cross/Blue Shield were not obligated under that policy to make payments to the IUs for the physical therapy treatments. Regarding the three contractual provisions relied on by Blue Cross/Blue Shield in denying reimbursement to the IUs, the court noted there was a disputed issue of fact as to whether the physical therapy provided to Todd Gillespie and Kevin Nonemaker would have been medically necessary if the EHA had not been enacted. The court assumed, for purposes of the motion, that the services would have been medically necessary.
 
 
 8
 The court held, however, that there was no disputed issue of material fact with respect to the procedure for reimbursement for Major Medical coverage. The court construed the policy as requiring payment directly to the subscriber, and held that there is no applicable provision for assignment. The court accepted defendants' contention that "because there is no actual charge upon which an appropriate Blue Shield reimbursement calculation could be based" and "no deductibles are paid," the reimbursement provisions of the policy bar payment. It stated that the plaintiffs' "suggested scheme for payments to be made directly to the IU's, totally disregards the [reimbursement] terms of the policy." Consequently, the court concluded that plaintiffs had not stated a cause of action upon which relief can be granted under the terms of their policy with Blue Cross/Blue Shield. Under this approach, the court never reached the issues of the construction and validity of the exclusionary provisions of the Blue Cross/Blue Shield policy.[1]
 
 
 9
 The scope of our review from the district court's grant of a motion to dismiss is plenary. Daly v. United States Dept. of the Army, 860 F.2d 592, 593 (3d Cir.1988).
 
 III.
 Discussion
 A.
 
 10
 The EHA is a comprehensive program enacted by Congress to assist the states "in complying with their constitutional obligations to provide public education for handicapped children." Smith v. Robinson, 468 U.S. 992, 1009, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984). Under the Act, federal funding to support education for handicapped children is available to states if they have in effect a "policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. Sec. 1412(1) (1988). The Act defines "free appropriate public education" as
 
 
 11
 special education and related services that--(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) ...
 
 20 U.S.C. Sec. 1401(a)(18) (1988).[2]
 
 12
 Although defendants agree with the district court's action in dismissing the complaint, they argue that the district court erred in construing the statutory language "free appropriate public education" to mean "free to the parents." Defendants argue that the IUs have a statutory duty to provide an appropriate public education for handicapped children at public expense, and they complain that the district court should have adopted their position that the EHA does not authorize shifting of costs to private insurers.
 
 
 13
 We see no reason to reach this amorphous issue in the context of this appeal. The district court's statement was not necessary to its decision. Even Blue Cross/Blue Shield concede that under some circumstances, they would be obliged to pay for physical therapy services furnished pursuant to a handicapped child's individualized education program.[3] We therefore leave consideration of the theoretical question of the meaning of a "free" appropriate education to the case where it is necessary to the disposition.
 
 
 14
 Similarly, we are reluctant to decide this appeal as did the district court on the basis of the reimbursement scheme. The plaintiffs argue that the district court had no basis from the complaint to assume that there was no actual charge made on which a reimbursement calculation could be based, had no evidence with respect to the status of payment of deductibles and coinsurance, and could not properly rely on payment procedures or Assignment Account Guidelines which were not properly in evidence. It may be that the district court correctly analyzed these issues, but we are sensitive to plaintiffs' contention that there are relevant facts which were not of record and which should have been the subject of discovery. Accordingly, we leave undecided the issue of the reimbursement scheme.[4] It is more productive for us to examine whether the language of the policy relied on by plaintiffs purports to cover the physical therapy services at issue, and we turn in particular to the exclusions on which defendants rely.
 
 B.
 
 15
 Blue Cross/Blue Shield relied in the district court on the provisions in the Major Medical policy specifying that coverage is excluded for:
 
 
 16
 Services or supplies for which the subscriber is not legally obligated to pay:
 
 
 17
 Services or supplies paid or which the subscriber is entitled to have paid or to obtain without cost under the laws or regulations of any federal, state, provincial, or local government or any political subdivision thereof;
 
 
 18
 Complaint at Exhibit A, App. at 67-68, and Exhibit B, App. at 125-126. Plaintiffs suggest that neither the district court nor this court may properly rely on the brochure describing the Blue Cross and Blue Shield health plans which plaintiffs attached to the complaint. They contend that these matters are outside the bounds of the complaint and can be considered only after the motion to dismiss is converted into a Rule 56 summary judgment motion, allowing the parties a reasonable opportunity to present all pertinent materials. See Fed.R.Civ.P. 12(b); see also JM Mechanical Corp. v. United States, 716 F.2d 190, 196-97 (3d Cir.1983).
 
 
 19
 Although plaintiffs now argue that the descriptive material attached to the complaint is not the actual policy or contract,[5] the plaintiffs, having themselves attached this material to their complaint and described the exhibits in the complaint as "true and correct cop[ies] of the [subscribers'] polic[ies] which [are] incorporated herein as though fully set forth," App. at 14, 15, are bound by them. The exhibits were properly considered by the district court in granting the motion to dismiss. See Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067 (11th Cir.1984), cert. denied, 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986); Amfac Mortgage Corp. v. Arizona Mall, 583 F.2d 426 (9th Cir.1978); Fed.R.Civ.P. 10(c) ("a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); cf. Rose v. Bartle, 871 F.2d 331, 339-40 n. 3 (3d Cir.1989) (distinguishing between documentary exhibits, such as contracts, which are written instruments for purposes of Rule 10(c), and affidavits, which are not).[6]
 
 
 20
 Moreover, plaintiffs have not suggested to this court that these descriptive brochures are not accurate as to the scope of health care coverage provided in the respects relevant here. In fact, as to the exclusion on which we focus, the complaint specifically provides:
 
 
 21
 Both the Gillespies' and the Nonemakers' insurance agreements exclude from payment by Blue Cross services or supplies for which the subscriber is not legally obligated to pay as well as services or supplies for which the subscriber is entitled to have paid or obtain without cost under the laws or regulations of any federal, state, provincial or local government or any political subdivision.
 
 
 22
 App. at 12. Indeed, these exclusions form the basis of one of the, if not the principal, legal arguments asserted on appeal. Accordingly, we are free to examine as a matter of law the effect of the exclusions pled by plaintiffs.
 
 C.
 
 23
 It is undisputed that the children of the Gillespies and Nonemakers are entitled "to obtain without cost" under the EHA the physical therapy services provided and that the parents are "not legally obligated to pay" for these services. The exclusionary provisions, therefore, explicitly preclude Blue Cross/Blue Shield coverage of the physical therapy and they would appear to be dispositive of plaintiffs' claim. Plaintiffs, however, contend that the exclusionary provisions are in contravention of the provisions of, and public policy underlying, the EHA, as well as of regulations promulgated under the Act.
 
 
 24
 Plaintiffs rely on the following language in the EHA:
 
 
 25
 Any State meeting the eligibility requirements.... shall ...
 
 
 26
 (9) provide satisfactory assurance that Federal funds made available under this subchapter--(A) will not be commingled with State funds, and (B) will be so used as to supplement and increase the level of Federal, State and local funds (including funds that are not under the direct control of State or local educational agencies) expended for special education and related services provided to handicapped children under this subchapter and in no case to supplant such Federal, State or local funds....
 
 
 27
 20 U.S.C. Sec. 1413(a)(9) (1988). Plaintiffs contend that because this language requires that federal funds supplement, and not supplant, other available resources, the EHA cannot be relied on to relieve private insurers of otherwise valid contractual obligations.
 
 
 28
 We find it questionable whether this language has any application to private insurance funds, because it appears to be directed to supplementation of "Federal, State and local funds." There is no direct reference to private funds. However, even if we were to assume, arguendo, that the language "including funds that are not under the direct control of State or local educational agencies" refers to private insurance dollars, rather than public funds, at most this would bar supplanting, i.e., substitution, of federal funds for private funds previously expended for such services. This is a far cry from reading the language to require insurers to cover the costs of services which the policy excludes.
 
 
 29
 Plaintiffs point to a paragraph in the Senate Report which states:
 
 
 30
 Under the Committee Bill, a State's application shall provide that special education and related services shall be provided at no cost to the parents of a handicapped child. This provision is designed to insure that students served by private facilities are treated equally with those in public schools and is not to be construed to prohibit charges by the educational agency to insurers, public programs, and others for hospital care, health services, rehabilitation, and other non-educational services. States are encouraged to utilize all sources of support for comprehensive services for handicapped students.
 
 
 31
 S.Rep. No. 168, 94th Cong., 1st Sess. 32, reprinted in 1975 U.S.Code Cong. & Admin.News 1425, 1456 (emphasis added).
 
 
 32
 We find no support in this paragraph for plaintiffs' position that the Act prohibits insurers from excluding coverage for services that must be provided free under the Act. A statement that an agency is not prohibited from charging insurers for special education and related services simply cannot be transmuted into congressional intent to abrogate agreed-upon exclusions or to require insurers to cover costs for services which the parties agreed to exempt from coverage.
 
 
 33
 Plaintiffs purport to find support in the regulation implementing the Act promulgated by the Office of Special Education and Rehabilitative Services of the Department of Education which provides that:
 
 
 34
 (a) Each State may use whatever State, local, Federal, and private sources of support are available in the State to meet the requirements of this part....
 
 
 35
 (b) Nothing in this part relieves an insurer or similar third party from an otherwise valid obligation to provide or to pay for services provided to a handicapped child.
 
 
 36
 34 C.F.R. Sec. 300.301 (1988) (emphasis added).
 
 
 37
 This has been followed by the Secretary of Education's policy interpretation of the EHA that "[t]he responsibility to make available a free appropriate public education does not mean that a public educational agency must use only its own funds for that purpose. An agency may use whatever State, local, Federal, and private sources of support are available to pay for required services." 45 Fed.Reg. 86,390 (1980) (emphasis added).
 
 
 38
 Although we should defer to the statutory interpretation of the Department of Education, which administers the EHA, see Irving Indep. School Dist. v. Tatro, 468 U.S. 883, 891-92, 104 S.Ct. 3371, 3376-77, 82 L.Ed.2d 664 (1984), neither the regulation nor the policy interpretation does more than interpret the EHA as permitting states to use available funds from insurers. "Available" funds must be read as being limited to funds which the insurers are obligated to provide under the applicable contract. Nothing in the regulation or policy statement requires insurers to commit funds which are not available because they are explicitly excluded from the contract.[7]
 
 
 39
 Finally, plaintiffs rely on what they refer to as "policy interpretations." In response to an inquiry from counsel for plaintiffs in this case regarding the validity of the Blue Cross and Blue Shield exclusionary provisions at issue, the Director of the Office of Special Education Programs stated that "the regulations implementing Part B [of the Act] make clear that the EHA was not intended to relieve insurers of obligations that they would otherwise have had EHA not been enacted." U.S. Dept. of Education, Office of Special Educational Programs, Policy Letter (Sept. 29, 1988) Ed. for Handicapped L. Rep. 213:214 (1989). There was a similar response to another inquiry a decade earlier, stating "[t]he insurer could not refuse to pay for the services simply because the State is responsible for providing a free appropriate public education to all handicapped children." U.S. Dept. of Education, State Policy and Admin. Review Branch, Policy Letter (Sept. 29, 1977) Ed. for Handicapped L.Rep. 211:06 (1979). See also id. at 211:103. ("The purpose of [34 C.F.R. Sec. 300.301] is to allow States to make use of all available resources to provide free appropriate public education for handicapped children, including available insurance proceeds."). These letters cannot support the weight plaintiffs place on them. Like the statute, regulation and policy statement, nothing in these letters states that an insurer cannot contractually exclude coverage for services that are provided free under the Act.
 
 
 40
 If the administrative interpretation were as broad as plaintiffs claim, we would have to decide whether it departed so markedly from the statutory text, legislative history and policy underlying the statutory scheme that deference would not be due. The Supreme Court's statement that administrative rulings, interpretations and opinions " 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' " was tempered by its cautionary note that " '[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " General Electric Co. v. Gilbert, 429 U.S. 125, 141-42, 97 S.Ct. 401, 410-11, 50 L.Ed.2d 343 (1976) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). Because the letters cited by plaintiffs are consistent with, and go no further than, the regulation found at 34 C.F.R. Sec. 300.301, which we have already held does not support the position advocated by plaintiffs, we need not decide the extent to which they must be accorded deference.[8]
 
 
 41
 We recognize that there is some tension between an administrative policy that insurers should not be able to use the availability of free services under the EHA to avoid obligations to pay for those services and the provision in the Blue Cross/Blue Shield policy that services which are provided by the government without cost are excluded from coverage. However, we cannot conclude, without clear statutory support, that Congress intended the EHA to abrogate such a provision in a privately negotiated contract. We are confident that Congress would not have done so without explicitly so providing.
 
 
 42
 Because we are unable to discern a congressional intent to intervene in the contractual relationship between insurers and subscribers, we hold that on the face of the plain terms of the exclusions in the Major Medical policy, Blue Cross/Blue Shield are not liable for the costs of the physical therapy at issue in this case.
 
 IV.
 Conclusion
 
 43
 For the foregoing reasons, we will affirm the district court's order dismissing the action.
 
 
 
 *
 Hon. John C. Lifland, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Because the district court held that the plaintiffs did not satisfy the reimbursement provisions of the policy and were not permitted to assign their policy benefits to the IUs, it also did not reach the argument of Blue Cross/Blue Shield that the McCarran-Ferguson Act, 15 U.S.C. Secs. 1011-1015, prohibits invalidation of the exclusionary provisions of the Major Medical policy. In light of our holding that the exclusionary provisions are dispositive of this case, we similarly need not reach this issue. Blue Cross/Blue Shield also argued that the IUs lack standing to assert claims under the Nonemakers' and Gillespies' policies. Because the Nonemakers and Gillespies are appellants, and their standing is unquestioned, it is also unnecessary for us to reach the standing issue
 
 
 [2]
 Under the Act, the term "special education" is defined as:
 specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions.
 20 U.S.C. Sec. 1401(a)(16) (1988). The term "related services" is defined as:
 transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.
 Id. at Sec. 1401(a)(17) (1988).
 
 
 [3]
 They state, for example, "[i]f a handicapped child were receiving physical therapy services for which Blue Cross and Blue Shield paid prior to being enrolled in a special education program, the insurers could not discontinue payment and demand that the provider of those services bill the intermediate unit." Brief of Appellees at p. 32 n. 7
 
 
 [4]
 We therefore need not consider Blue Cross/Blue Shield's contention that the requirement that the parents pay the applicable deductibles and coinsurance under the Major Medical policy is inconsistent with the Act's explicit provision that the related services must be "free". See Interpretation of 34 C.F.R. Secs. 104 and 300 at 45 Fed.Reg. 86,390 (1980). Cf. Seals v. Loftis, 614 F.Supp. 302 (E.D.Tenn.1985) (IU cannot require parents to use insurance proceeds if result is to decrease maximum lifetime benefits available under policy). Nor do we need to reach Blue Cross/Blue Shield's further claim that payment by the IUs of the deductibles and coinsurance, rather than by the parents, would not satisfy the provisions of the policy
 
 
 [5]
 The heading of the relevant portion of the attachment is "General Description of Your Blue Cross and Blue Shield Major Medical Benefits." App. at 60, 118. It is unclear from the record whether there is a separate contract with each subscriber, as distinguished from the subscriber's employer
 
 
 [6]
 In Goodwin v. Elkins & Co., 730 F.2d 99 (3d Cir.1984), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984), we considered, without resolving, the appropriateness of the district court's reliance on a partnership agreement, signed by the plaintiff, which was attached to the defendant's motion to dismiss. Judge Garth explicitly did not reach the question, see id. at 103 n. 6, 104 n. 9, Chief Judge Seitz stated that such reliance was in fact inappropriate, but was harmless error in that case, see id. at 111-12 (Seitz, J., concurring), and Judge Becker would have held that it was proper for the district court to rely on the partnership agreement, as it was "actually and necessarily relied upon in the allegation of [the complaint], and its authenticity [was] conceded." Id. at 113-14 (Becker, J., concurring)
 Unlike the partnership agreement at issue in Goodwin, which was attached by the defendant to its motion to dismiss, the Blue Cross and Blue Shield brochures were attached by the plaintiffs to their complaint and incorporated by reference therein. The issue which the Goodwin court was unable to resolve is therefore not present in the instant case.
 
 
 [7]
 Seals v. Loftis, 614 F.Supp. 302 (E.D.Tenn.1985), relied on by plaintiffs, held only that parents could be required to seek reimbursement from their insurer if they would incur no costs in doing so, but in no way suggested that insurers are required to cover the costs of services explicitly exempted from coverage. See also Gehman v. Prudential Property and Casualty Ins. Co., 702 F.Supp. 1192 (E.D.Pa.1989)
 
 
 [8]
 We note that the administrative interpretation of the regulation in 1978 was similar to that which we give it in the text. Blue Cross and Blue Shield of Iowa had requested an interpretation as to whether the regulation at 45 C.F.R. Sec. 121a.301(b) (recodified at 34 C.F.R. Sec. 300.301(b)) nullified provisions in their health contracts excluding coverage for hospital costs which the subscriber was entitled to obtain without cost by complying with any federal, state, or municipal law. The Bureau of Education for the Handicapped responded:
 you asked whether Reg. 121a.301(b)[:] (1) nullifies a private insurance contract exclusion prohibiting reimbursement for hospital services which an insuree could obtain without cost by complying with a Federal, State or local law or (2) clarifies that an insurer may still be required to fulfill valid obligations. The second interpretation is correct. ... Reg. 121a.301(b) was included to make it clear that the public educational agencies did not necessarily have to pay the costs, but could use any available Federal, State, local or private funds, including private insurance benefits.
 U.S. Dept. of Education, State Policy and Admin. Review Branch, Policy Letter (Oct. 3, 1978) Ed. for Handicapped L.Rep. 211:76 (1979) (emphasis added).