**John L. and Mabel A. JOHNSON, Plaintiffs,**

v.

**BANC ONE ACCEPTANCE CORPORATION d/b/a Bank One, N.A., and the Knox Financial Group, L.L.C., Defendants.**

CIV.A. No. 03–378.

United States District Court, E.D. Pennsylvania.

July 7, 2003.

**452**

David A. Scholl, Newtown Square, PA, for plaintiffs.

David M. Breschi, Laurence W. Dague, Melissa A. Swauger, Shumaker Williams, P.C., Harrisburg, PA, for defendants.

### MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs John and Mabel Johnson assert claims under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the federal Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"), the Pennsylvania Credit Services Act, 73 Pa.C.S. § 2181 *et seq.* ("CSA"), the Pennsylvania Loan Broker Trade Practice Regulations, 37 Pa. ADC 305.3(a)(1)-(4), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. § 201–1 *et seq.* ("UTPCPL") against defendant mortgage broker The Knox Financial Group, LLC ("Knox") and lender Banc One Acceptance Corporation d/b/a/ Bank One, N.A. ("Bank One"). The claims arise out of a refinance mortgage loan that the parties closed on November 29, 2000.

Defendants now move to dismiss the plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Before us are the Plaintiffs' Amended Complaint, filed May 6, 2003, Defendants', the Knox Financial Group, LLC and Banc One Acceptance Corporation, Motion to Dismiss Plaintiffs' Amended Complaint, filed June 5, 2003, and Plaintiffs' Memo-randum of Law in Opposition to Motion of Defendants to Dismiss Plaintiffs' Amended Complaint, filed June 17, 2003. For the following reasons, we grant the defendants' motion with respect to certain aspects of the plaintiffs' federal claims, deny their motion with respect to other elements of the federal claims, and deny their motion without prejudice with respect to the state law claims.

### I. STATEMENT OF JURISDICTION

We have jurisdiction to hear the plaintiffs' federal TILA and HOEPA claims under our federal question jurisdiction, 28 U.S.C. § 1331. We exercise our supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to consider the plaintiffs' state law claims because they arise out of the same transaction and occurrence as do their federal claims.

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint in whole or in part "for failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss under Rule 12(b)(6), "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984).

### III. FACTS

The plaintiffs are an elderly and disabled couple residing in Easton, Pennsyl-

vania. They allege that some time in the year 2000, Knox solicited them to refinance their mortgage on their home. According to the Johnsons, Knox indicated that the refinancing package it would arrange for them would lower their monthly mortgage payments and allow them to pay off their credit card debt in full. Because they desired to do these things, the Johnsons ultimately agreed to enter into the loan agreement with which Knox had solicited them. However, the Johnsons allege that Knox never clearly explained the terms of the loan. They also specifically assert that Knox never explained the meaning of the term "balloon payment" or the significance of being required to make such a payment even though the refinancing package was structured to require a very large final payment. The Johnsons admit that the term "balloon payment" was mentioned at the closing.

The Johnsons closed the loan with an unknown representative of Knox on November 29, 2000, at which time they received a Truth in Lending Disclosures form, attached to the Amended Complaint as Exhibit A, and a Notice of Right of Rescission. They did not receive a settlement statement, attached to the Amended Complaint as Exhibit C.

The principal amount of the loan was $72,000 at an annual percentage rate of 10.765 percent. The refinancing loan was structured such that the plaintiffs were required to make one hundred and seventy-nine monthly payments of $621.15 commencing on January 18, 2001 and a single payment of $59,231.22 as the one hundred eightieth payment on December 18, 2015. This meant that the Johnsons' total payments would amount to $170,417.07 over fifteen years. Of this, some $103,588.07 was the "Finance Charge" and $66,829.00

was the "Amount Financed." These facts are presented on the face of the Truth in Lending Disclosures form. In addition, the Truth in Lending Disclosures form reveals that there were prepaid finance charges of $5,171.00 and other itemized charges totaling $1,169.40, which included a charge for "Insurance Companies" of $627.40.[1]

The Johnsons allege that their new monthly payment in fact exceeded their old monthly mortgage payment in contradiction of Knox's solicitation. They, through counsel, sought to rescind the refinancing loan by letter dated September 30, 2002. Bank One did not respond to their letter. They then contacted the Commonwealth Department of Banking, which refused to take action. The Johnsons subsequently commenced this action on May 6, 2003.

## IV. DISCUSSION

The substance of the Johnsons' allegations appears to be that: 1) Bank One did not include in its calculation of the Finance Charge certain items that TILA required them to include; 2) Bank One did not make certain disclosures required under the HOEPA; 3) Knox did not make disclosures required under the CSA; 4) Bank One is liable under the CSA because it allowed Knox to perform services on its behalf; 5) Knox violated the Pennsylvania Loan Broker Trade Practice Regulations by failing to disclose material facts about the refinancing package or by providing misleading information and 6) both Knox and Bank One violated the UTPCPL by failing to disclose material facts and/or by providing deceptive information regarding the monthly payment amount and balloon

---

1. The manner in which the Finance Charge was calculated is not presented in the Disclo-

sures Form, but it is clear that these itemized charges were not included in that calculation.

payment.[2] The defendants assert in their joint Motion to Dismiss that they complied with TILA's requirements, that the loan is not covered by HOEPA, that Knox is not covered by the CSA, that Bank One cannot be held liable for an alleged CSA violation on the part of Knox, and that to succeed under the UTPCPL, the plaintiffs are required to, and did not, allege the elements of common law fraud. They also argue that should we dismiss the plaintiffs' federal claims, the exercise of supplemental jurisdiction over the remaining state law claims would be inappropriate.

Although we do not dismiss the federal TILA or HOEPA claims, we nevertheless believe that it would be inappropriate at this stage to make legal rulings regarding the state law claims because we believe that further discovery may reveal that there is no basis for the federal causes of action. We therefore deny the defendants' motion to dismiss in most respects with regard to the federal claims but defer definitive rulings on the state law claims until after limited discovery on the issues discussed below is completed.

## A. The Truth in Lending Act

The Truth in Lending Act requires that creditors disclose certain information in a prescribed manner to potential debtors prior to the extension of credit. 15 U.S.C. § 1601 *et seq.* As relevant to this case, TILA requires a lender to disclose the "Finance Charge," a defined term in the statute. 15 U.S.C. §§ 1605, 1638. The Finance Charge must be disclosed "clearly and conspicuously, . . . [and] more conspicuously than other terms, data or information provided in connection with a transaction." 15 U.S.C. § 1632(a). Indeed, TILA prescribes the manner of required disclosures in significant detail. 15 U.S.C. § 1632. However, so long as a lender

utilizes the model disclosure forms created pursuant to the statute, it "shall be deemed to be in compliance with the disclosure provisions of this subchapter with respect to other than numerical disclosures." 15 U.S.C. § 1604.

TILA defines the Finance Charge that must be disclosed as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Thus, charges such as interest, service charges, loan fees, credit report or investigation fees and borrower-paid mortgage broker fees must be included in the Finance Charge. *Id.* The Finance Charge itself must not be itemized in the TILA disclosure. 15 U.S.C. § 1638(a)(3). However, certain items are specifically exempted from the computation of the Finance Charge so long as they are "bona fide and reasonable in amount," including:

(I) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.

(ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.

(iii) Notary and credit report fees.

(iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.

(v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

12 C.F.R. § 226.4(c); 15 U.S.C. § 1605(e).

2. These claims are put forward in only four counts in the Amended Complaint.

The Finance Charge disclosed must be accurate to within one hundred dollars of the actual Finance Charge. 15 U.S.C. § 1605(f)(1).

Also relevant to this case, TILA requires that "the number, amount, and due dates or period of payments scheduled to repay the total of payments" be disclosed. 15 U.S.C. § 1638(a)(7).

The plaintiffs' complaint is not entirely clear in its attempt to define the ways in which the defendants are alleged to have violated TILA. However, we discern several distinct claims, of which two have primary importance: 1) that Bank One improperly excluded from its computation of the Finance Charge charges for title insurance, notary fees, abstract or title search, endorsements, flood hazard determination and tax information and 2) that the Johnsons were not apprised of the meaning of the term "balloon payment". The defendants assert that neither allegation states a cause of action. As discussed below, we allow the first claim to go forward, but dismiss the second claim for failure to state a cause of action.

The plaintiffs also make much of the alleged failure of Bank One to make its itemized disclosures "clear and conspicuous." However, TILA only demands that information that is required to be disclosed under the act be disclosed clearly and conspicuously. 15 U.S.C. § 1632(a). Optional information, such as the itemized disclosures not included in the Finance Charge made by Bank One, are not subject to this requirement. *See* 15 U.S.C. § 1632(b). We dismiss this claim as failing to state a cause of action.

■ The plaintiffs also now object to the fact that they never received a settlement statement itemizing all of the factors that went into the computation of the Finance Charge until this litigation commenced. This settlement statement appears to be attached as exhibit C to the plaintiffs' amended complaint. This allegation is insufficient to support a cause of action under TILA because TILA specifically requires only that an option to receive an itemized statement must be provided by the creditor on the disclosure form, 15 U.S.C. § 1638(a)(2)(B), and Bank One included this option in the disclosure it provided to the plaintiffs. That they failed to elect to receive an itemized statement does not establish a violation on the part of Bank One. We dismiss this claim as failing to state a cause of action.

■ Finally, the plaintiffs allege that they exercised their right to rescind the loan but that Bank One did not perform duties required of it in response to the exercise of their right of rescission under 15 U.S.C. § 1635(b). This allegation fails to state a claim, however, because the right of rescission retained by an obligor must be exercised within three days of the closing of the transaction. 15 U.S.C. § 1635(a). The Johnsons did not attempt to rescind the loan agreement until September 30, 2002, nearly two years after the closing date of the loan. Thus, Bank One was not under any obligation to respond to their request to rescind. We therefore dismiss this claim as failing to state a cause of action.

We discuss the first two allegations below.

**1. Alleged Finance Charge Inaccuracies**

As to the first allegation, it is clear that, so long as the itemized charges were "bona fide and reasonable in amount," Bank One properly excluded them from the calculation of the Finance Charge. 12 C.F.R. § 226.4(c). The Johnsons challenge both the bona fides of the excluded charges and the reasonableness of their amounts.

However, they have made no factual allegations to support their claim that any of the charges were not bona fide, and have offered factual allegations with regard to the reasonableness of the charges only for the title insurance and notary fees. We therefore address only these two charges. We find that the plaintiffs have alleged facts that are sufficient to maintain their cause of action pending further discovery.

### a. Title Insurance

■ The plaintiffs allege that the Manual of the Title Insurance Rating Bureau of Pennsylvania sets forth a schedule of the maximum premiums any title insurance company may impose, and that the maximum amount for "reissued" title insurance that may be imposed on a loan of $72,000 is $593.68. Bank One charged the Johnsons $627.50. If Bank One charged a rate for title insurance premiums in excess of the amount allowable under Pennsylvania law, then we might well find such a charge presumptively unreasonable and/or not bona fide. Such a determination could lead to a finding that they violated TILA by not including the title insurance premium in the computation of the Finance Charge. Several issues must be explored in discovery before we can make such a determination.

First, it is not clear to us that the Manual of the Title Insurance Rating Bureau of Pennsylvania is binding on the defendants.

The Manual is binding only on the members and subscribers of the Title Insurance Rating Bureau of Pennsylvania, and we cannot conclude at this stage of the litigation whether the issuer of the title insurance for which Bank One charged the plaintiffs was required to follow the guidelines laid out in the Manual. *See* Manual of the Title Insurance Rating Bureau of Pennsylvania, Introduction, at http://www.palandtransfer.com/rate_manual.html. Discovery on the issuer's identity and status with respect to the Manual is required.

Second, the plaintiffs' calculations depend upon their unsupported claim that they are entitled to the "reissue rate." This rate, defined as ninety percent of the maximum allowable rate, is available only if "the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the earlier policy is produced notwithstanding the amount of coverage provided by the prior policy." *Id.* at Sec. 5.3. In this case, the maximum allowable rate for title insurance appears to be $660.75, whereas Bank One charged the Johnsons $627.40.[3] If the Johnsons were entitled to the reissue rate, ninety percent of $660.75, or $594.68, then Bank One exceeded the maximum allowable rate by $32.73.[4] The facts necessary to ascertain whether the Johnsons are entitled to anything other

---

**3.** The Manual sets forth the following method of computing the maximum rate:

The first $30,000 of coverage requires a premium of $390.00. For each $1,000 of coverage between $30,001 and $45,000, an additional $7.25 is added to the premium. Between $45,001 and $100,000, an additional $6.00 is added for each $1,000 in coverage. Manual of Title Insurance Rating Bureau of Pennsylvania, at Sec. 5.17, at http://www.palandtransfer.com/rate_manual.html. Thus, the maximum allowable premium for title insurance on the plaintiffs' $72,000 loan, assuming they are covered for only the amount of the loan, is: $390.00 + $7.25*(15) + $6.00*(27) = $660.75.

**4.** Although the plaintiffs do not make this argument, we note that it is possible that they are entitled to the refinance rate set forth in Section 5.6 of the Manual, which is eighty percent of the reissue rate, or seventy-two percent of the maximum rate. If this is the case, then Bank One exceeded the maximum they could charge by $151.66.

than the maximum allowable rate are not in the record. We take the Johnsons' allegation that they are entitled to the reissue rate as fact for the purposes of this motion, and recognize that they may be able, after some discovery, to demonstrate that they are entitled to the refinance rate as well. *Scheuer*, 416 U.S. 232, 94 S.Ct. 1683.

The third issue that must be explored in discovery is whether the amount charged by Bank One for title insurance included elements that are not restricted by the maximum allowable charge as set forth in Section 2.1 of the Manual.

In addition, even should the plaintiffs be able to demonstrate, after some discovery, that Bank One charged more than the maximum allowable rate for title insurance, at least two legal issues must be resolved (which have not yet been adequately briefed by either party) before they may establish that they have a valid cause of action under TILA. First, the two sides disagree on whether the entire amount of any charge that is not "reasonable in amount," *see* 12 C.F.R. § 226.4(c), should be included in the Finance Charge, or only that portion of the charge which makes it not "reasonable in amount." Even if the Johnsons are entitled to the reissue rate, because the difference between that rate and what Bank One actually charged is less than one hundred dollars, Bank One's Finance Charge disclosure would not be materially inaccurate under TILA if the latter course is correct. 15 U.S.C. § 1605(f)(1). Of course, if the Johnsons are entitled to the refinance rate, then the question is immaterial because under either scenario, Bank One's Finance Charge disclosure would be incorrect by more than one hundred dollars. Second, neither party has

briefed the legal issue of the relationship between the term in the federal act "reasonable in amount" and the schedule of rates set forth in the Manual. This is a legal issue that must be briefed in any future motion for dismissal or judgment on the plaintiffs' federal claim.

### b. Notary Expenses

■ The plaintiffs argue that the maximum amount that a notary may charge in Pennsylvania is two dollars. They provide no support for this contention, but the defendants do not dispute it. Bank One disclosed a charge of ten dollars for notary expenses. In discovery, it must be ascertained whether this notary charge was for a single notarization or for multiple notarizations. If Bank One charged more than two dollars for each notarization, the plaintiffs are correct that the notary charge would be unreasonable. Unless other inaccuracies in Bank One's Finance Charge calculation amount to at least ninety dollars and one cent, however, the failure to include notary expenses in the computation of the Finance Charge would be harmless. 15 U.S.C. § 1605(f)(1).

### 2. Balloon Payment

■ The plaintiffs' second allegation, that the nature of the balloon payment was insufficiently disclosed to them, is insufficient to support a cause of action under TILA. Bank One complied with TILA's requirements by providing a clear and concise breakdown of "the number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(7). On the TILA Disclosures form, attached as exhibit A to the plaintiffs' amended complaint, the following table appears:

| My Payment Schedule will be: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments are Due |
| 179 | $ 621.15 | monthly beginning January 18, 2001 |
| 1 | $ 59,231.22 | December 18, 2015 |

Pl. Amndd.Complaint, Exh. A.[5]

Bank One had no further obligation to provide information as to the payment schedule. The fact that the plaintiffs allegedly did not understand that they would be required to make a single payment of nearly sixty thousand dollars at the end of the term of their loan is unfortunate, but Bank One complied with the law. The plaintiffs' contention regarding the balloon payment is insufficient to support a cause of action against Bank One under TILA, and we therefore dismiss it.[6]

**B. Home Ownership and Equity Protection Act**

█ In 1994, The Truth In Lending Act was augmented by the Home Ownership and Equity Protection Act ("HOEPA"). Pub.L. 103–325, Title I, § 151, Sept. 23, 1994, 108 Stat. 2190. HOEPA covers certain high-rate loans defined as

a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if—

(A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or

(B) the total points and fees payable by the consumer at or before closing will exceed the greater of—

(I) 8 percent of the total loan amount; or

(ii) $400.

15 U.S.C. § 1602(aa)

If a credit transaction is covered by HOEPA, the creditor must make several disclo-

---

**5.** In deciding a motion to dismiss, a district court may consider exhibits attached to the complaint without converting the motion into one for summary judgment. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990); *Bell Atlantic–Pennsylvania, Inc. v. Pennsylvania Public Utility Comm'n*, 107 F.Supp.2d 653, 659 (E.D.Pa.2000).

**6.** As part of their UTPCPL claim against Knox and Bank One, the plaintiffs separately contend that they were not apprised of the signifi-

cance of having a balloon payment in the solicitation and discussions leading up to the closing, and that if they had been, they would not have taken the loan. We offer no opinion as to the validity of this claim at this stage except to say that the fact that Bank One apparently complied with TILA's requirements regarding disclosure at the closing says nothing about whether they or Knox engaged in unfair or deceptive practices under the UTPCPL in the period leading up to the closing.

sures in addition to those normally required under TILA. 15 U.S.C. § 1639. It is undisputed that Bank One never provided these disclosures to the Johnsons.

HOEPA defines the points and fees used to determine whether a loan is covered as "all items included in the Finance Charge, except interest or the time-price differential," "all compensation paid to mortgage brokers," and any charges excludable under Section 1605(e) unless they are reasonable, the creditor received no compensation for them and the charge is paid to a non-affiliated third party. 15 U.S.C. § 1602(aa)(4). In this case, therefore, the total points and fees are equal to the prepaid finance charge, $5,171, unless any of the Section 1605(e) excludable charges are not reasonable.[7]

The Johnsons contend that their refinancing loan is covered by HOEPA because the title insurance, notary and flood hazard inspection charges were not reasonable for substantially the same reasons we outlined above. In order for their allegation to state a cause of action, the sum of these three items must be sufficient to increase the percentage of the amount financed represented by points and fees to over eight percent. The amount financed is equal to the principal loan amount less total points and fees. Thus, the Johnsons' allegation, if proven, would have to demonstrate that the total points and fees charged should have been $5334, or $163 more than Bank One calculated.[8] As we discussed above, it is possible that Bank One charged more than the maximum allowable title insurance premium and nota-

ry charges. Discovery is required on these issues. Depending on whether discovery reveals that the Johnsons are entitled to the refinance rate on their title insurance, and/or on whether the full amount of any unreasonable charge should be added to the points and fees or just the portion that makes it unreasonable, it is possible that the Johnsons may be able to demonstrate that the loan is covered by HOEPA. Because we take their allegation as fact that they are entitled to the reissue rate, and perceive that they may be able to demonstrate their entitlement to the refinance rate, and because the parties have inadequately briefed the issue of whether the whole amount of any unreasonable charge should be applied to the total points and fees, we will deny the defendants' motion to dismiss this claim pending further discovery on the issues outlined in this Memorandum.

## C. State Law Claims

We have found that the defendants are not entitled to dismissal of the federal TILA or HOEPA claims at this stage of the litigation. However, it may become clear that the plaintiffs cannot maintain their federal causes of action following a period of discovery limited to the issues we have discussed above. In such a situation, we would not have jurisdiction to hear their state law claims. We therefore defer our ruling on those claims and deny the defendants' motion to dismiss with regard to those claims without prejudice to their ability to file a motion for summary judg-

---

**7.** Plaintiffs do not appear to contend that Bank One received any compensation for any of these charges or that they were paid to a third party affiliated with Bank One. *See* 15 U.S.C. § 1602(aa)(4)(C).

**8.** If the total points and fees were $5333, it would represent a percentage of: $5333

(points and fees) / ($72,000 (principal)— $5333 (points and fees)) = $5333 (points and fees) / $66,667 (amount payable) = 7.9995%. At $5334, the points and fees represent a percentage of $5334 / ($72,000—$5334) = $5334 / $66,666 = 8.0011%.

ment or other appropriate motion following a limited period of discovery.

## V. CONCLUSION

The defendants have failed to show that the plaintiffs can prove no set of facts that would entitle them to relief with regard to their TILA and HOEPA claims based on Bank One's failure to include title insurance and notary fees in the Finance Charge. Further discovery on these two issues is required. The defendants have shown that the plaintiffs have not stated a cause of action with regard to their TILA claims based on inadequate disclosure of the balloon payment, unclear disclosure of itemized charges, the failure of Bank One to provide an itemized settlement sheet and the failure of Bank One to respond to their exercise of their right of rescission. These claims are therefore dismissed. It appears that there is a significant likelihood that limited discovery will reveal that the plaintiffs cannot succeed in their federal claims. We therefore defer ruling on their state law claims and deny the defendants' motion with respect to those claims without prejudice to the right of the parties to raise these issues in a motion for summary judgment or other appropriate motion. An appropriate order follows.

### ORDER

AND NOW, this 3rd day of July, 2003, upon consideration of the Plaintiffs' Amended Complaint, filed May 6, 2003, Defendants', the Knox Financial Group, LLC and Banc One Acceptance Corporation, Motion to Dismiss Plaintiffs' Amended Complaint, filed June 5, 2003, and Plaintiffs' Memorandum of Law in Opposition to Motion of Defendants to Dismiss Plaintiffs' Amended Complaint, filed June 17, 2003, it is hereby ORDERED that:

1. The defendants' motion is GRANTED with respect to:

   a. The plaintiffs' allegation that the defendants violated the Truth in Lending Act by inadequately disclosing the existence or significance of the balloon payment payable at the end of the loan period.

   b. The plaintiffs' allegation that the defendants violated the Truth in Lending Act by not clearly disclosing itemized charges that were not included in the computation of the Finance Charge.

   c. The plaintiffs' allegation that the defendants violated the Truth in Lending Act by failing to provide them with an itemized settlement sheet.

   d. The plaintiffs' allegation that the defendants violated the Truth in Lending Act by failing to respond to their exercise of their alleged right of rescission.

2. These claims are accordingly DISMISSED WITH PREJUDICE.

3. The defendants' motion is DENIED with respect to:

   a. The plaintiffs' allegation that defendants violated the Truth in Lending Act by failing to include in the computation of the Finance Charge the title insurance premium and notary charges.

   b. The plaintiffs' allegation that the defendants failed to make disclosures required under the Home Ownership and Equity Protection Act.

4. The defendants' motion is DENIED with respect to the plaintiffs' state law claims WITHOUT PREJUDICE to their ability to file a future motion for summary judgment or other appropriate motion dealing with those claims after a limited period of discovery.

5. The parties are granted an immediate four (4) month period of discovery. Any discovery disputes shall be brought to the attention of Magistrate Judge Rappoport by letter or other informal means.