Daniel **MARRAZZO** and Carmela Marrazzo, h/w

v.

**BUCKS COUNTY BANK AND TRUST COMPANY.**

No. 92–5694.

United States District Court, E.D. Pennsylvania.

Feb. 9, 1993.

Leo R. Zamparelli, Trenton, NJ, for plaintiffs.

David N. Bressler, Lesser & Kaplin, Blue Bell, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant, Bucks County Bank and Trust Company, has refiled its Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) thereby again raising the argument that the said amended complaint fails to state a claim upon which relief can be granted. For the reasons outlined below, the Defendant's motion is granted.

Briefly stated, the relevant facts underlying the instant action as stated in the amended complaint, are as follows. Plaintiffs Daniel and Carmela Marrazzo are the proprietors of a business known as Manor Lane Florist located in Yardley, Pennsylvania. Since 1988, the Marrazzos have had their business checking accounts and a line of credit with the defendant bank. According to the amended complaint, "on occasion, beginning in 1988, Bucks County Bank would receive for payment a check or checks drawn on the Marrazzos' account for which the Marrazzos did not have sufficient funds on deposit." On such occasions, the bank would typically hold the checks for one day until the Plaintiff could deposit sufficient funds to cover the check and would then honor the check. Although it is alleged that the bank never lost any money as a result of having to hold the Marrazzos' checks and the Marrazzos never authorized it, the bank charged a fee of $25.00 per check held and deducted that fee directly from the subject checking account. The Plaintiffs contend in paragraph 20 of their amended complaint that a total of $108,775.00 was unlawfully deducted from their Bucks County checking account in the period between 1988 and 1991 and it is this sum which they seek to recover together with treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, the Fair Credit and Charge Card Disclosure Act of 1988, 15 U.S.C. §§ 1631, 1637 and under theories of usury, breach of fiduciary duty, breach of the obligation of good faith and fair dealing, breach of duty of due care and conversion.

## I. STANDARDS GOVERNING MOTIONS TO DISMISS

The requirements for pleading claims in the U.S. District Courts are clearly stated in the Federal Rules of Civil Procedure. Under Fed.R.Civ.P. 8(a),

> "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded."

It is similarly clear that the sufficiency of a pleading is properly challenged by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). In disposing of such a motion, the court must accept the facts alleged in the complaint as true together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa. 1991). To prevail on a motion to dismiss, a defendant must establish that the plaintiffs can prove no set of facts which would entitle them to relief. *Hendix v. Fleming Companies*, 650 F.Supp. 301 (W.D.Okla.1986) citing, *inter alia, Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *See Also: Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988). The same standards apply to motions to dismiss RICO claims. *Rose v. Bartle*, 871 F.2d 331, 355 (3rd Cir.1989).

## II. THE SUFFICIENCY OF PLAINTIFFS' CLAIMS

### A. *Plaintiffs' RICO Claims*

It is well-settled that any person injured in his or her business or property by a RICO violation may bring a civil suit to recover treble damages. 18 U.S.C. § 1964(c). Although the amended complaint is not entirely clear as to the nature of the Marrazzos' RICO claims,[1] it appears that they are trying to state causes of action under Sections 1962(a) and (c) of the Act. Section 1962(a) of the RICO statute makes it unlawful for "any person who has received any income directly or indirectly from a pattern of racketeering activity" to use or invest that income in the acquisition, establishment or operation of any enterprise affecting or engaged in interstate or foreign commerce. Under Section 1962(c), it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of an unlawful debt."

While "enterprise," "racketeering activity," and "pattern of racketeering activity" are defined in Section 1961, these definitions in and of themselves do not completely delineate the pleading requirements needed to state claims for relief under each of the subsections of § 1962.[2] To successfully

---

1. Indeed, paragraph 24 of the amended complaint charges that the defendant bank imposed usurious finance charges against the Plaintiffs' checking account in violation of 18 U.S.C. §§ 1961 and 1962(a). In Counts I and II of the amended complaint, however, the Plaintiffs allege that in sending out allegedly fraudulent bank statements, the bank engaged in a pattern of racketeering activity in violation of § 1961(c) and 15 U.S.C. § 1601 *et seq.* Insofar as Section 1961 provides only definitions and there is no subsection (c), we shall treat those counts as requesting relief under Section 1962(c).

2. Section 1961 defines, *inter alia*, the terms "racketeering activity," "person," "pattern of racketeering activity" and "enterprise" in the following manner:

(1) "racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: .... Section 1341 (relating to mail fraud), section

1343 (relating to wire fraud),.... (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act;

.....

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within

plead a claim for civil relief under Section 1962(a), a plaintiff must allege (1) that the defendant has received money from a pattern of racketeering activity, and (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce. *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3rd Cir.1989). Stated otherwise, a plaintiff must allege injury resulting from the investment of racketeering income (investment injury) as distinct from injury from the predicate acts themselves. *Glessner v. Kenny*, 952 F.2d 702, 708 (3rd Cir.1991); *Rose v. Bartle*, 871 F.2d 331, 357–358 (3rd Cir.1989).

■ To state a Section 1962(c) claim, the following four elements must be alleged: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Shearin v. E.F. Hutton Group, Inc.*, *supra*, at 1165. Since § 1962(c) requires a finding that the defendant "person" conducted or participated in the affairs of an "enterprise" through a pattern of racketeering activity, the "person" charged with a violation of § 1962(c) must be distinct from the "enterprise." *Brittingham v. Mobil Corporation*, 943 F.2d 297, 300 (3rd Cir.1991); *Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–634 (3rd Cir.1984).

■ In determining whether a pattern of racketeering activity has been adequately pled, the Court must initially consider whether a plaintiff can show both that the predicate acts of racketeering are related *and* that they amount to a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). In this respect, it should be noted that continuity

ten years (excluding any period of imprisonment) after the commission of a prior act of

has been said to be both a closed and open-ended concept referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time *or* by demonstrating that a threat of continuing criminal activity exists. *Id.*, 492 U.S. at 241, 109 S.Ct. at 2902; *Hindes v. Castle*, 937 F.2d 868, 872 (3rd Cir.1991).

■ In assessing whether a sufficient showing of continuity and relatedness has been made then, a court may consider for example: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902; *Hindes*, 937 F.2d at 873 both citing, *Barticheck v. Fidelity Union Bank*, 832 F.2d 36 (3rd Cir.1987). Similarly, threatened criminal conduct can also be established by showing that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3rd Cir.1991).

■ The Court's inquiry for relatedness in turn, may additionally focus on whether the alleged predicate acts are interrelated by distinguishing characteristics and are not isolated events. *Rose v. Bartle*, 871 F.2d 331, 364 (3rd Cir.1989). To be sure, the predicate acts relied upon to support a conviction under RICO must have the same or similar purposes, results, participants, victims or methods of commission or must be otherwise interrelated so as not to be isolated events. *U.S. v. Pelullo*, 964 F.2d 193, 207 (3rd Cir. 1992); *Kehr Packages, Inc. v. Fidelcor, Inc.*, *supra*, at 1412 both citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, *supra*, 492 U.S. at 239, 109 S.Ct. at 2900.

racketeering activity;

■ Applying the preceding principles to the matter at bar and accepting all of the allegations contained in the Plaintiffs' amended complaint as true, the Court can reach no other conclusion but that the Plaintiffs have failed to state claims for civil relief under either Section 1962(a) or Section 1962(c). Specifically, the paragraphs outlining the common facts and Counts I and II, essentially aver only that the defendant bank's practice of assessing the $25.00 per check fee constituted a scheme and a pattern of racketeering activity which was perpetrated over the course of a three-year period by transmitting purportedly fraudulent bank statements to the Marrazzos through the United States mail in violation of 18 U.S.C. § 1341 and 15 U.S.C. §§ 1631 and 1637 and that the defendant bank was a "person" and an "enterprise" within the meaning of 18 U.S.C. § 1961(3) and (4). Paragraph 25 further alleges that the defendant bank engaged in and its activities affected interstate commerce.

For purposes of assessing whether these contentions are adequate to make out a Section 1962(a) violation, we first find that while two of the three necessary elements have been pled, (albeit inartfully) the amended complaint sorely lacks any mention or showing that the defendant bank invested the money which it received from the Plaintiffs or that the Plaintiffs suffered some injury as a result of the Defendant's investment. In short, the amended complaint does not make any distinction between the harm allegedly suffered as a consequence of the predicate acts and the Defendant's investment of the income received from its purportedly illegal acts.

We similarly find the amended complaint deficient insofar as the Plaintiffs' attempt to state a cause of action under Section 1962(c) is concerned. For one, while an entity can be both an enterprise and a defendant for purposes of § 1962(a), such a dual role is impermissible in actions based on § 1962(c). *Kehr Packages, Inc. v. Fidelcor, Inc., supra* at 1411. Given Plaintiffs' repeated averments (in paragraphs 25, 26, 32 and 33) that Bucks County Bank is both a person and a RICO enterprise, there again has obviously been no distinction made between the two as is required under the above-cited standards. *See Also: State Farm Mutual Auto Insurance Co. v. Rosenfield,* 683 F.Supp. 106, 110 (E.D.Pa.1988). For these reasons, Counts I and II of the Plaintiffs' amended complaint charging Defendant with RICO violations must be dismissed.

B. *Plaintiffs' Claim under the Home Equity Consumer Protection Act and the Fair Credit and Charge Card Disclosure Acts of 1988*

■ In Count III of their amended complaint, the Marrazzos claim entitlement to double damages, interest, costs and attorney's fees for Defendant's alleged violations of the Home Equity Consumer Protection/Fair Credit and Charge Card Disclosure Acts of 1988, 15 U.S.C. §§ 1601, 1631 and 1637. It appears to be the gravamen of Plaintiffs' complaint that the defendant bank's purported failure to disclose the existence of the $25 per check "hold fee" and the annual interest rate which it represents constituted a violation of the foregoing statutes. We disagree.

Section 1601 states that the findings and intent of Congress in enacting the Fair Credit Acts was to enhance "economic stabilization," foster the "informed use of credit by consumers" and "protect the consumer against inaccurate and unfair credit billing and credit card practices" by assuring "meaningful and accurate disclosures" of credit and lease terms. *See Generally: Anderson Bros. Ford. v. Valencia,* 452 U.S. 205, 220, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981); *Streit v. Fireside Chrysler–Plymouth, Inc.,* 697 F.2d 193, 197 (7th Cir.1983). 15 U.S.C. § 1631, in turn, outlines the various requirements for disclosure in transactions involving an extension of credit. That section states, in relevant part:

**§ 1631. Disclosure requirements**
**Duty of creditor or lessor respecting one or more than one obligor**

(a) Subject to subsection (b) of this section, a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchap-

ter. In a transaction involving more than one obligor, a creditor or lessor, except in a transaction under section 1635 of this title, need not disclose to more than one of such obligors if the obligor given disclosure is a primary obligor.

**Creditor or lessor required to make disclosure**

(b) If a transaction involves one creditor as defined in section 1602(f) of this title, or one lessor as defined in section 1667(3) of this title, such creditor or lessor shall make the disclosures. If a transaction involves more than one creditor or lessor, only one creditor or lessor shall be required to make the disclosures. The Board shall by regulation specify which creditor or lessor shall make the disclosures.

On the other hand, Section 1637 sets forth the requirements for credit term disclosures under open end consumer credit plans. According to the definitions and rules of construction delineated in Section 1602, "credit means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). An "open end credit plan" is "a plan under which the creditor reasonably contemplates repeated transactions, which prescribe the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance...." 15 U.S.C. § 1602(i). The adjective "consumer" used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1602(h). Finally, Section 1602(f) defines the term creditor as follows:

(f) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, the term "creditor" shall also include card issuers whether or not the amount due is payable by agreement in more than four installments or the payment of a finance charge is or may be required, and the Board shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans.

As is clear from the face of the challenged pleading in the instant case, the Plaintiffs are complaining of the imposition of service or finance charges against their *business* checking account. Inasmuch as the disclosure provisions invoked by the Plaintiffs apply only to *consumer* credit transactions as defined above, and in light of the fact that there are no allegations nor is there anything to suggest that the Defendant's charges constitute or were levied as the result of an extension of credit, we find that the Plaintiffs have not stated a claim upon which relief can be granted under 15 U.S.C. § 1601, 1631 and 1637. Count III of the amended complaint is therefore also dismissed.

C. *Plaintiffs' Claims under State and Common Law*

In Counts IV, V, VI, VII and VIII of their amended complaint, Plaintiffs endeavor to plead causes of action for the Defendant's alleged violation of Act 6 of 1974, 41 P.S. § 101, *et. seq.* and its purported breach of fiduciary duty, breach of a duty of good faith and fair dealing, negligence and unlawful conversion of Plaintiffs' funds. The provi-

444

sions of 28 U.S.C. § 1367 governing supplemental jurisdiction in the district courts are clear. Specifically, § 1367 states, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

.    .    .    .    .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(3) the district court has dismissed all claims over which it has original jurisdiction.

Inasmuch as the Plaintiffs' federal claims must be dismissed, this Court sees no need to evaluate the sufficiency of their state law claims. Rather, we find that those causes of action are more suitably raised and considered in the appropriate state court. Accordingly, Counts IV through VIII are dismissed for lack of subject matter jurisdiction without prejudice to Plaintiffs to refile them in the proper state forum. *See Also:* 28 U.S.C. § 1331.

For all of the foregoing reasons, the attached order is hereby entered.

## ORDER

AND NOW, this 9th day of February, 1993, upon consideration of the Motion of Defendant Bucks County Bank and Trust Company to Dismiss the Plaintiffs' Amended Complaint, it is hereby ORDERED that the Motion is GRANTED and Plaintiffs' Amended Complaint is DISMISSED in accordance with the reasoning set forth in the foregoing Memorandum.