**Gary C. TYLER,**

v.

**George M. O'NEILL, Michelenia O'Neill and Wm. M. Hendrickson, Inc.**

**Civil Action No. 97–3353.**

United States District Court,
E.D. Pennsylvania.

Feb. 23, 1998.

1. Plaintiff withdrew Counts IV and V (doc. no. 8).

Bruce S. Marks, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Plaintiff.

Jeffrey B. McCarron, Christopher D. McDemus, Swartz, Campbell & Detweiler, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This case has been brought before the Court upon motion of Defendants for dismissal of Plaintiff's second amended complaint. For the reasons which follow, the motion shall be granted in part and denied in part.

### Factual Background

According to the allegations in plaintiff's complaint, defendant, Wm. M. Hendrickson, Inc. ("Hendrickson") is a Pennsylvania corporation engaged in the business of repairing railway cars with its principal place of business in Philadelphia. In 1981, Defendant George O'Neill purchased 90% of the stock of Hendrickson and left his employment with General Electric to take over the company.

In reliance upon O'Neill's representation that he would make more money investing in Hendrickson than he would if he invested in GE, plaintiff purchased some 400 shares or 10% of Hendrickson for $20,000 at about the same time.

Hendrickson purportedly grew and by 1988, had shareholders' equity of $927,000. From time to time, Plaintiff received dividend payments from Hendrickson as a return on his investment and interest in the company. Beginning in the late 1980's or early 1990's, George O'Neill told plaintiff that the company would be relocating to a new facility which it was building on land which it was purchasing at 7700 Holstein Avenue in Philadelphia. Unbeknownst to plaintiff, however, it was George and Michelenia O'Neill who, backed by a guarantee from Hendrickson, Inc., financed the purchase of the land and the construction of the building and who took title to both the property and the facility. Thereafter, the O'Neills charged and received from Hendrickson nearly $1 million in rent from 1991 through June, 1997.

The complaint further alleges that in 1997, plaintiff learned for the first time that between 1988 and 1990, Hendrickson paid George O'Neill substantial bonuses and consulting fees in excess of $500,000 and that the O'Neills falsely represented Mr. O'Neill to be the company's sole owner in loan applications, income tax returns and in filings with the Bankruptcy Court pursuant to a corporate reorganization so as to conceal the company's true financial condition from him. Following Mr. Tyler's relocation to Wilmington, DE in 1996 to assume employment with Hendrickson, he received financial statements reflecting that the total shareholders' equity had dropped to $43,233. When plaintiff tried to learn about the company's finances and what caused the reduction in shareholders' equity, George O'Neill terminated him. Plaintiff contends that he believes George O'Neill has diverted other funds from the company to himself and that further demand on the company or O'Neill for an inspection of the company's books and records would be futile.

On the basis of these alleged facts, Mr. Tyler seeks relief against both George and

Michelenia O'Neill and Hendrickson, Inc. for violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, *et. seq.*, the Pennsylvania Business Corporation Law, 15 Pa.C.S. § 1508, the Pennsylvania Unfair Trade Practices and Consumer Protection Statute and the Pennsylvania Wage Payment and Collection Law, breach of fiduciary duty, fraud and civil conspiracy. Defendants move to dismiss Count I in its entirety as moot and the remaining counts for failure to state a claim upon which relief can be granted.

### Standards Applicable to 12(b)(6) Motions

The rules governing the pleading of cases in the district courts are clear. Under Fed. R.Civ.P.8(a),

> "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

It is equally clear that the issue of the sufficiency of a pleading may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) or through a motion for a more definite statement under Rule 12(e). In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land*

*Co.*, 906 F.2d 100, 103 (3rd Cir.1990); *Hough/ Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa.1991). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988); *Angelastro v. Prudential–Bache Securities,Inc.*, 764 F.2d 939, 944 (3rd Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

### Discussion

#### A. Motion to Dismiss Count I as Moot.

■ Defendants first assert that Plaintiff's claim for breach of the Pennsylvania Business Corporation Law, 15 Pa.C.S. § 1508 should be dismissed as moot. We cannot agree.

It is clear that under 15 Pa.C.S. § 1508(b),

> Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder. In every instance where an attorney or other agent is the person who seeks the right of inspection, the demand shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder. The demand shall be directed to the corporation at its registered office in this Commonwealth or at its principal place of business wherever situated.

Authority to institute a legal proceeding to enforce this right of inspection is conferred upon a shareholder (or attorney or agent acting on behalf of a shareholder) in

§ 1508(c). Prior to instituting such a proceeding, the shareholder first must establish that the purpose for which inspection is sought is proper and that he or she has complied with the requirements in § 1508(b) for making an inspection demand. Thereafter, the burden of proving that the inspection was for an improper purpose falls on the corporation. 15 Pa.C.S. § 1508(c); *Goldman v. Trans–United Industries, Inc.*, 404 Pa. 288, 171 A.2d 788 (1961).

In this case, plaintiff alleges that by letter from his attorney to Defendant O'Neill in his capacity as President of Wm. M. Hendrickson, Inc. dated April 9, 1997, he made a demand to inspect and copy the company's books and records pursuant to 15 Pa.C.S. § 1508. (Second Amended Complaint, ¶ 79 and Exhibit "A" thereto). That letter recited the purpose for the inspection as being "... to determine the rights and liabilities of Mr. Tyler as a shareholder, including, but not limited to, a determination of the assets and liabilities and the income and expenses of the Corporation over the past 10 years ...," and was accompanied by a verified power of attorney executed by Mr. Tyler. (Second Amended Complaint, Exhibit "A"). The Complaint further avers that although Mr. O'Neill initially responded that the Company agreed to the inspection, when plaintiff's accountant and attorney appeared for the inspection on May 2, 1997, O'Neill refused to permit it. (Second Amended Complaint, ¶ s 80–81, 97). Although certain records were produced after the complaint in this matter was filed, numerous records have not been produced. (2d Am.Compl., ¶ 98).

We find these allegations, viewed in the light most favorable to the plaintiff as the non-movant, to be sufficient to state a claim for a violation of Section 1508 of the Business Corporations Law, notwithstanding the vagueness of plaintiff's averment that "certain records were produced subsequent to the filing of the complaint." As it remains unclear to this Court as to whether an inspection was permitted of all of those books and records of the Company which plaintiff requested, Count I of the second amended complaint cannot be dismissed as moot based on the existing record. Count I shall therefore be permitted to stand.

**B. Dismissal of Derivative Claims**

■ Defendants next move to dismiss Counts II through VII for the reason that claims which involve harm to the corporation must be maintained by the corporation—not by a shareholder as an individual. While we would agree that at first blush plaintiff's complaint is confusing, it nevertheless appears after careful examination that only Counts II (Breach of Fiduciary Duty), III (Fraud) and VII (Civil Conspiracy) seek to recover damages on behalf of both the corporation and plaintiff individually, while the remaining claims (for violations of the RICO Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Act and the Wage Payment and Collection Law) seem to be asserted by Mr. Tyler only in his own behalf.

■ As a general rule, an action for injury to a corporation must be pursued in the name of the corporation; that an individual shareholder or employee may sustain harm incidental to the injury to the corporation does not confer upon him standing to sue. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 787 F.Supp. 471, 474 (E.D.Pa.1992), *aff'd in part, vacated in part on other grounds,* 20 F.3d 1250 (3rd Cir.1994). Where, however, an individual stockholder or officer has pled an injury separate and distinct from that suffered by the corporation, such as where a corporation tortiously conspires with others to cause him harm, a cause of action arises which belongs to the individual. *Moffatt Enterprises, Inc. v. Borden, Inc.,* 807 F.2d 1169, 1176 (3rd Cir.1986); *eds Adjusters, Inc. v. Computer Sciences Corp.,* 818 F.Supp. 120, 121 (E.D.Pa.1993); *Temp–Way Corp. v. Continental Bank,* 139 B.R. 299, 316–317 (E.D.Pa.1992), *aff'd,* 981 F.2d 1248 (3rd Cir.1992). The general test for determining whether an action asserts a direct or derivative claim is:

If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it

is an individual action. On the other hand, if the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a stockholder is allowable, and a stockholder cannot sue as an individual. The action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.

John L. *Motley Associates, Inc. v. Rumbaugh,* 104 B.R. 683, 686 (E.D.Pa.1989), citing *In Re Penn Central Securities Litigation,* 347 F.Supp. 1327 (E.D.Pa.1972), 13 *W. Fletcher, Corporations,* § 5911 (1970); *J. Moore, Federal Practice,* § 23.1.16[1] (2d ed. 1969).

Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991), quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). Thus, the derivative form of action permits an individual shareholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." To prevent abuse of this remedy, the courts established as a precondition to suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions. *Id.,* quoting *Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970).

The pleading of derivative actions by shareholders is governed by Fed.R.Civ.P. 23.1, which states, in relevant part:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association....

The rule therefore requires a shareholder derivative complaint to allege either that a demand was made or the reasons for failing to make the demand. Courts will excuse the derivative shareholder from the demand requirement when the allegations show that the directors upon whom demand would be made are too involved in the alleged wrongdoing to determine fairly whether the claim should be pursued by the corporation. *In Re Sunrise Securities Litigation,* 916 F.2d 874, 879, note 5 (3rd Cir.1990). Because Rule 23.1 gives little dimension to the requirements for demand, state law of the state of incorporation fills in the contours of the demand mandate. *BTZ, Inc. v. Grove,* 803 F.Supp. 1019, 1020 (M.D.Pa.1992). *In accord, Kamen v. Kemper Financial Services, Inc., supra,* 500 U.S. at 95–99, 111 S.Ct. at 1716–1717. In this case, Wm. M. Hendrickson, Inc. is a Pennsylvania corporation and we are therefore compelled to examine the demand futility exception as codified in the Pennsylvania statute and interpreted by the Pennsylvania courts. *See, e.g.: Garber v. Lego, supra,* at 1201.

In so doing, we find that Pennsylvania's demand requirement, codified at 42 Pa.C.S. § 1506(a)(2), Pa.R.C.P., is quite simi-

lar to Fed.R.Civ.P. 23.1 and that it likewise directs that a derivative plaintiff must set forth the efforts made to secure enforcement by the corporation or similar entity or the reason for not making such efforts.[1] Traditionally, the Pennsylvania courts have been aggressive in enforcing the demand requirements. *In Re Westinghouse Securities Litigation*, 832 F.Supp. 989, 995 (W.D.Pa.1993). Thus under Pennsylvania law also, the failure to first demand the corporation to take action will only be excused where the plaintiff states with particularity averments of participation, self-dealing, bias, bad faith or corrupt motive such as alleging that a majority of the defendant directors are insiders who have depleted and misappropriated corporate assets for their own personal gain. *Id.*, at 996, citing, *inter alia, Lewis v. Curtis*, 671 F.2d 779 (3rd Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Recchion on Behalf of Westinghouse Elec. Corp. v. Kirby*, 637 F.Supp. 1309, 1320 (W.D.Pa.1986). Stated otherwise, "in order to excuse demand under Pennsylvania law, the plaintiff must allege that a majority of the board of directors engaged in acts that are fraudulent, not that they merely exercised erroneous business judgment." *Garber*, at 1203.

Applying the preceding principles to the case at hand, we first note that the Second Amended Complaint alleges the plaintiff has been a shareholder in Hendrickson since 1981 and that this action is not a collusive one to confer jurisdiction on a U.S. District Court where no such jurisdiction would otherwise exist. (2d Am. Compl., ¶s9–10). Plaintiff further avers that given Mr. and Mrs. O'Neill's alleged past conduct of fraudulent bankruptcy and tax filings, concealment of company financial information and diversion of corporate assets and income to them-

selves, further demand that the corporation institute suit would be futile. (2d Am. Compl. ¶s 85–95). We find that these averments, viewed in the context of the second amended complaint as a whole and accepting them and all reasonable inferences that can be drawn from them as true and in the light most favorable to plaintiff, are sufficient to satisfy the pleading requirements of Fed. R.Civ.P. 23.1 and Pa.R.C.P. 1506(a). These claims shall therefore be permitted to stand in their derivative capacity and defendants' motion to dismiss these claims is denied.

**C. Request for Dismissal of Plaintiff's Claims for Breach of Fiduciary Duty, Fraud and Conspiracy.**

Having found that the second amended complaint sufficiently pleads facts to excuse the demand requirements for derivative actions, we must next examine whether it adequately states causes of action under the theories of breach of fiduciary duty, fraud and conspiracy upon which relief may be granted against the defendants and in favor of Plaintiff Tyler in both his individual capacities and in his capacity as minority shareholder of Hendrickson.

A fiduciary duty arises when the relationship between the parties is one of trust and confidence such that the party in whom trust and confidence is reposed must act with scrupulous fairness and good faith in his dealing with the other and refrain from using his position to the other's detriment and his own advantage. *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759, 763 (1971). Fiduciary duty demands undivided loyalty, prohibits conflicts of interest and its breach is actionable. *See, e.g., Maritrans v. Pepper, Hamil-*

---

1. Specifically, Rule 1506 states, in pertinent part:
 (a) In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could have been asserted by it, the complaint shall set forth
 (1) that each plaintiff is a stockholder or owner of an interest in the corporation or other entity,
 (2) the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts, and

 (3) either
 (i) that each plaintiff was a stockholder or owner of an interest in the corporation or other entity at the time of the transaction of which he complains or that his stock or interest devolved upon him by operation of law from a person who was a stockholder or owner at that time, or
 (ii) that there is a strong prima facie case in favor of the claim asserted on behalf of the corporation and that without the action serious injustice will result.

ton & Scheetz, 529 Pa. 241, 602 A.2d 1277, 1283 (1992), citing, inter alia, Stockton v. Ford, 52 U.S. (11 How.) 232, 13 L.Ed. 676 (1850). A business relationship may be the basis of a confidential relationship if one party surrenders substantial control over some portion of his affairs to the other. Chrysler Credit Corp. v. B.J.M.,Jr., Inc., 834 F.Supp. 813, 842 (E.D.Pa.1993) citing Commonwealth, Dep't. of Transportation v. E–Z Parks, 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 (1993).

■ It is axiomatic that in Pennsylvania, as in most jurisdictions, officers and directors of a corporation stand in a fiduciary relation to the corporation and must discharge the duties of their position in good faith and with the diligence, care, and skill which ordinarily prudent persons would exercise under similar circumstances. In re Allegheny International, Inc., 954 F.2d 167, 180 (3rd Cir.1992); Enterra Corp. v. SGS Associates, 600 F.Supp. 678, 684 (E.D.Pa.1985). The duty of loyalty requires that corporate officers devote themselves to the corporate affairs with a view to promote the common interests and not their own; they cannot directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed also by their fellow shareholders. In re Athos Steel and Aluminum, Inc., 71 B.R. 525, 540 (Bkrtcy.E.D.Pa.1987). It is therefore the general rule that directors of a corporation may not seize for their own personal gain a business opportunity which lies within the scope of the corporation's activities unless the corporation itself is incapable of taking advantage of the opportunity. In re Insulfoams, Inc., 184 B.R. 694, 707 (Bkrtcy.W.D.Pa.1995), aff'd, 104 F.3d 547 (3rd Cir.1997). While whether something constitutes a business opportunity is a question of fact that is determined by reference to the circumstances surrounding it, a business opportunity generally is acknowledged as belonging to the corporation if the corporation is in the same or related business as is the subject matter of the opportunity. Id.

■ Similarly under Pennsylvania law, majority shareholders or group of shareholders who combine to form a majority, are fiduciaries, and they may not use their voting power to benefit themselves personally at the expense of the minority. Id; In the Matter of Reading Company, 2 B.R. 719, 724 (E.D.Pa.1980); Provident National Bank v. United States, 436 F.Supp. 587, 589 (E.D.Pa. 1977). The test of liability for breach of fiduciary duty is whether the officer, director, or shareholder was unjustly enriched by their actions. In re Insulfoams, supra, at 708, citing Bailey v. Jacobs, 325 Pa. 187, 189 A. 320, 324 (1937).

■ An employee, in turn, as an agent of his employer,is considered a fiduciary with respect to matters within the scope of his agency. See: SHV Coal, Inc. v. Continental Grain Co., 376 Pa.Super. 241, 545 A.2d 917, 920–921 (1988), rev'd on other grounds, 526 Pa. 489, 587 A.2d 702 (1991).

■ Fraud, in turn, arises under Pennsylvania law where the following elements coalesce: (1) a material misrepresentation of fact, (2) which is false, and (3) made with knowledge of its falsity, (4) which is intended to induce the receiver to act, and (5) upon which a party justifiably relies. Michael v. Shiley, Inc., 46 F.3d 1316, 1333 (3rd Cir.1995); Sowell v. Butcher & Singer, Inc., 926 F.2d 289 (3rd Cir.1991). Fraud consists of anything that is calculated to deceive, whether by single act or combination or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. Moser v. DeSetta, 527 Pa. 157, 589 A.2d 679, 682 (1991). See Also: Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882 (1994); Cottman Transmission Systems, Inc. v. Melody, 869 F.Supp. 1180, 1186 (E.D.Pa.1994).

■ Civil conspiracy occurs where two or more persons combine or agree with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466 (1979); Doe v. Kohn, Nast & Graf, P.C., 862 F.Supp. 1310, 1328 (E.D.Pa.1994). Malice; i.e., intent to injure and a lack of justification, are essential parts of a civil conspiracy cause of action. Barmasters Bartending School v. Authentic Bartending School, 931 F.Supp. 377, 386

(E.D.Pa.1996) citing *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 333 612 A.2d 500, 508–509 (1992).

Generally under Pennsylvania law, a corporation cannot conspire with itself nor with its officers and agents when they act solely for the corporation and not on their own behalf. *Doe v. Kohn, Nast & Graf, supra,* at 1328. However, a corporation can conspire with its agents or employees if the agents or employees are acting not for the corporation, but for personal reasons and one of the parties to the conspiracy is not an agent or employee of the corporation. *Id.,* citing *Johnston v. Baker,* 445 F.2d 424, 426–427 (3rd Cir.1971). This rule has been liberally construed, however, so as to allow a civil conspiracy claim to proceed where agents or employees act outside of their corporate roles even in the absence of a co-conspirator from outside the corporation. *Id.,* citing, *inter alia, Denenberg v. American Family Corp.,* 566 F.Supp. 1242, 1253 (E.D.Pa.1983) and *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 188 (E.D.Pa.1978).

In applying the foregoing to the matter now before us, we note that the second amended complaint avers that since 1981 Defendant George O'Neill has been an officer, director and 90% share owner of Hendrickson, Inc., that Michelenia O'Neill is employed as Hendrickson's bookkeeper and manager and as such is authorized to sign checks on the company's behalf and that plaintiff, as minority shareholder trusted Mr. O'Neill to honestly and properly manage the company's affairs and to treat plaintiff fairly. (2d. Am. Compl.¶ s2, 3, 20, 24). Plaintiff further avers that in violation of his trust and their respective fiduciary duties to Hendrickson, Inc., the O'Neills usurped the Company's opportunity to purchase the land and building out of which the company's operations are run with the result that they took money from the company to pay themselves nearly $1 million in rent since 1991 and that the O'Neills are diverting proceeds from the sale of scrap copper from the company to themselves. (2d. Am. Compl., ¶ s 40–41, 88–89). Defendants have further endeavored to keep these dealings from coming to plaintiff's attention by refusing to provide him with financial statements and other information and by concealing plaintiff's ownership interest in the company by failing to include his name in loan applications, financing documents and income tax and bankruptcy filings. (2d. Am. Compl., ¶ s 29–39, 42–60, 63–70,74–81). These averments, we find, more than sufficiently allege a claim against defendants for breach of their fiduciary duties to both Mr. Tyler individually and as a minority shareholder and to the corporation itself. Consequently, Defendants' motion to dismiss plaintiff's claim for breach of fiduciary duty is denied.

In like fashion, we conclude that plaintiff has adequately pled claims upon which relief may be granted for civil conspiracy and fraud. Again, the second amended complaint alleges that the defendants conspired with one another and acted in concert in intentionally misrepresenting the company's financial condition and/or in failing to inform plaintiff of the reduction in shareholder's equity from $927,000 to $–43,233. Plaintiff further contends that defendants intentionally misrepresented George O'Neill as the sole owner and shareholder in Hendrickson in bankruptcy and tax filings and in financing applications so as to permit them to purchase the land and building in lieu of the company and thereafter charge the company rent. These actions had the effect of wasting the company's assets and depleting the equity in the company and the value of plaintiff's investment and defendants purportedly knew that plaintiff would rely on their conduct in concealing their actions in deciding not to undertake any efforts to reverse the fraud. (2d. Am. Compl. ¶ s21, 23, 25–70, 74, 109, 114). Thus, in application of the principles underlying Rule 12(b)(6), Defendants' motion to dismiss plaintiff's civil conspiracy and fraud claims under Pennsylvania state law must be denied.

### D. Dismissal of Plaintiff's RICO Claims.

Defendants next move to dismiss Counts V

and VI[2] which endeavor to state claims under Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et. seq.*

Under 18 U.S.C. § 1964(c), the right to commence a civil suit and recover treble damages is conferred upon "any person injured in his business or property by reason of a violation of section 1962." The options for proceeding under § 1962 are four-fold: § 1962(a) makes it unlawful for "any person who has received any income directly or indirectly from a pattern of racketeering activity[3] ... to use or invest that income" in the acquisition, establishment or operation of any enterprise affecting or engaged in interstate or foreign commerce. Section 1962(b) prohibits "any person through a pattern of racketeering activity or through collection of an unlawful debt" from acquiring or maintaining any interest in or control of any enterprise "engaged in or affecting interstate or foreign commerce." Under Section 1962(c), it is not permissible for "any person employed by or associated with any enterprise [affecting interstate or foreign commerce] to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." Finally, Section 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." *See: U.S. v. Console,* 13 F.3d 641, 650 (3rd Cir.1993).

Naturally, the pleading requirements differ depending upon which subsection of § 1962 has been invoked to obtain relief. To state a cause of action under Section 1962(c), it is incumbent upon a plaintiff to allege: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Shearin v. E.F.Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3rd Cir.1989); *Marrazzo v. Bucks County Bank and Trust Co.,* 814 F.Supp. 437, 441 (E.D.Pa.1993). However, since § 1962(c) requires a finding that the defendant "person" conducted or participated in the affairs of an "enterprise" through a pattern of racketeering activity, the "person" charged with a violation of § 1962(c) must be separate and distinct from the "enterprise." *Marrazzo,* at 441, citing *Brittingham v. Mobil Corporation,* 943 F.2d 297, 300 (3rd Cir. 1991). *See Also: Kehr Packages, Inc. v.Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3rd Cir. 1991).

 Similarly, to plead a "pattern of racketeering activity," a plaintiff must aver not only that the defendant committed at

---

**2.** As Plaintiff's Second Amended Complaint mistakenly proceeds from Count V to Count VII and contains two Counts numbered VII, we shall consider plaintiff's claim for RICO Conspiracy and Aiding and Abetting as Count VI.

**3.** According to 18 U.S.C. § 1961,
(1) "Racketeering activity means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code:....Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...."

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
(5) "pattern of racketeering activity: requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Kehr Packages, supra,* at 1412. Racketeering acts are said to be related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Schroeder v. Acceleration Life Insurance Co.*, 972 F.2d 41, 46 (3rd Cir.1992), citing *H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901.

■ Continuity, on the other hand, has been said to be both a closed and open-ended concept referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition. *H.J., Inc.*, 492 U.S. at 241–242, 109 S.Ct. at 2902. Thus, a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time or by demonstrating that a threat of continuing criminal activity exists. *Id.; Hindes v. Castle*, 937 F.2d 868, 872 (3rd Cir.1991).

■ Whether the predicate acts constitute a threat of continued racketeering activity depends on the specific facts of each case. *Tabas v. Tabas*, 47 F.3d 1280, 1295 (3rd Cir.1995). While predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement, open-ended continuity may be satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business or of conducting or participating in an ongoing and legitimate RICO enterprise. *H.J., Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902; *Tabas,* at 1295. In determining whether a pattern of racketeering activity has been established in a given case, it is appropriate to consider: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity.

*Tabas,* at 1292; *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3rd Cir.1987).

To plead a claim under § 1962(d), a plaintiff must allege that: (1) there was an agreement to commit the predicate acts of fraud, and (2) defendants had knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate §§ 1962(a), (b) or (c). *Martin v. Brown,* 758 F.Supp. 313, 319 (W.D.Pa.1990). Any claim under § 1962(d) based on a conspiracy to violate the other subsections of Section 1962 necessarily must fail if the substantive claims are themselves deficient. *Jiffy Lube International v. Jiffy Lube of Pennsylvania,* 848 F.Supp. 569, 583 (E.D.Pa.1994), citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3rd Cir.1993).

■ In this case, we find that plaintiff has sufficiently pled the elements needed to state claims under Sections 1962(c) and (d) of RICO to withstand defendants' 12(b)(6) motion. Indeed, the second amended complaint avers that Hendrickson, Inc. is an enterprise affecting interstate commerce and that the O'Neills were associated with and participated in Hendrickson's affairs through a pattern of racketeering activity. (2d. Am. Compl. ¶s121–122). Paragraphs 123–124 describe the pattern of racketeering activity as consisting of "... a scheme and artifice to defraud the Bank, the Bankruptcy Court and Plaintiff ..." by mailing tax returns and documents to the bank and bankruptcy court to obtain a construction loan, an equipment loan and a working capital loan, thereby committing mail and wire fraud. While these allegations are admittedly conclusory, when read in the context of the entire complaint, they are adequate to state a § 1962(c) claim given the averments in paragraphs 70, 74–76 and 83–89 that these actions were undertaken to conceal from plaintiff the company's true financial condition and the fact that the O'Neills had allegedly managed the company in such a way as to pay themselves more than $1,500,000 in rent, salaries, bonuses and other payments and to deplete the shareholder's equity from over $900,000 to $-43,000 in an eight-year period.

Likewise, inasmuch as Count VI avers that the O'Neills acted in concert and conspired together to violate Section 1962(c), we conclude that this Count, too, has pled sufficient facts to state a claim upon which relief may be granted under Section 1962(d). Accordingly, defendants' motion to dismiss Counts V and VI shall be denied.

### E. Defendants' Request to Dismiss Plaintiff's Claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Act.

■ Defendants have also moved for the dismissal of Count IV which endeavors to state a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et. seq.*

The Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL) declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause 2 of this act ....are ... unlawful ..." 73 P.S. § 201–3; *Denison v. Kelly,* 759 F.Supp. 199, 202 (M.D.Pa.1991). The CPL contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase. *Gemini Physical Therapy v. State Farm Mutual Automobile Insurance Co.,* 40 F.3d 63, 65 (3rd Cir.1994). Under § 201–2(4)(xxi), a seller of goods and services is prohibited from engaging in any "fraudulent conduct which creates the likelihood of confusion or misunderstanding." *Schroeder v. Acceleration Life Ins. Co., supra,* at 46; 73 P.S. §§ 201–2(4)(xxi), 201–3.

Although never specifically addressed by the Pennsylvania courts, as the holdings of the Middle and Eastern Districts evince, the CPL may apply to the providing of brokerage services, but is not applicable to sales of securities themselves. *Klein v. Opp,* 944 F.Supp. 396, 398 (E.D.Pa.1996); *Denison v. Kelly,* 759 F.Supp. 199, 202–203 (M.D.Pa. 1991). As plaintiff bases his CPL claim upon the defendants' purported "unfair and deceptive practices of concealing their improper conduct" [which] has caused [him] to suffer a loss in that the value of his shares is reduced and at no point avers that defendants' conduct was intended to or caused confusion or misunderstanding as to the company's stock, we conclude that he has failed to state a cause of action under the Act. As a result, Count IV shall be dismissed.

### F. Defendants' Motion for Dismissal of Plaintiff's Wage Payment and Collection Law Claim.

■ Finally, Defendants also seek dismissal of plaintiff's claim under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* as against Michelenia O'Neill and for the reason that there is no independent basis for jurisdiction over this state law cause of action. This latter argument is rejected outright in light of our denial of the motion for dismissal with regard to Counts I through III, V, VI and VII.

Under 43 P.S. § 260.2a, "employer" is defined as including "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the abovementioned classes employing any person in this Commonwealth." This definition has been interpreted as requiring, at a minimum, some indication that the defendant employer exercised a policy-making function in the company and/or an active role in the corporation's decision making process. *Mohney v. McClure,* 390 Pa.Super. 338, 568 A.2d 682, 686 (1990), citing, *inter alia, Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349 (1988) and *Central Pennsylvania Teamsters Pension Fund v. Burten,* 634 F.Supp. 128 (E.D.Pa.1986). *See Also: Amalgamated Cotton Garment and Allied Industries Fund v. Dion,* 341 Pa.Super. 12, 491 A.2d 123 (1985).

In application of these principles, we find that while plaintiff's second amended complaint is silent as to the extent to which Mrs. O'Neill served a policy-making function in the company, it does aver that, upon information and belief, she is either an officer or agent of the Company. Again reading these allegations in context with the others that Michelenia O'Neill was aware of and conspired with her husband to conceal the company's financial condition from plaintiff so as to facilitate defendants' receipt of continued

rental and other payments, we find there is sufficient indicia that Mrs. O'Neill is a corporate decision maker to withstand dismissal of plaintiff's wage payment claim at the pleadings stage. For these reasons, defendants' motion to dismiss shall be denied in this regard as well.

### *Conclusion*

For all of the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part and Count IV of the plaintiff's second amended complaint is dismissed. An order follows.