**Joseph J. HRUBAN, Appellant,**

v.

**Barry F. STEINMAN.**

No. 01–2277.

United States Court of Appeals,
Third Circuit.

Argued on June 24, 2002.

Decided July 25, 2002.

Michael K. Coran (Argued), Michael A. Iaconelli, Klehr, Harrison, Ellers, LLP, Philadelphia, PA, for Appellant.

Merrill G. Davidoff, Eric L. Cramer (Argued), Jenna Macnaughton–Wong, Berger & Montague, P.C., Philadelphia, PA, for Appellee.

Before BECKER, Chief Judge, ALITO, and AMBRO, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

In this appeal, Joseph Hruban challenges the decision of an arbitration panel of the National Association of Securities Dealers to award Barry Steinman over $1 million for his claims arising under Pennsylvania's Wage Payment and Collection Law, 43 Pa. Stat. § 260.1. The District Court denied Hruban's complaint seeking to upset the arbitrators' award. Under the deferential standard by which this Court must review the arbitrators' decision, we affirm.

The facts of this case are well known to the parties. Because we write only for their benefit, we will not belabor the factual and procedural background.[1] This Court exercises plenary review over the District Court's grant of Steinman's motion under Fed.R.Civ.P. 12(b)(6) to dismiss Hruban's complaint.

We review decisions of an arbitration panel under a highly deferential standard. The grounds upon which this Court may vacate an arbitration award are "narrow in the extreme." *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local* 195 *v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir.1975). It is not the proper role of the court to "sit as the [arbitration] panel did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers." *Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd.,* 868 F.2d 52, 56 (3d Cir.1989). In particular, Hruban invokes three grounds for vacatur recognized in prior Circuit precedent: (1) the panel exceeded its powers, (2) the panel displayed a manifest disregard of the law, and (3) the panel's decision was contrary to public policy.

First, to determine whether arbitrators exceeded their powers, this Court has employed a two-step analysis: (a) the form of the award must be rationally derived either from the agreement between the parties or from the parties' submission to the arbitrators, and (b) the terms of the award must not be "completely irrational." *Mutual Fire,* 868 F.2d at 56. A second possible ground for vacatur is "manifest disregard of the law." *Kaplan v. First Options of Chicago,* 19 F.3d 1503, 1520 (3d Cir. 1994); *see also First Options of Chicago v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Third, to warrant vacatur on public policy grounds under our prior cases, the arbitration award must "violate[ ] a 'well-defined and dominant' public policy, which we must 'ascertain[ ]' by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Exxon Shipping Co. v. Exxon Seamen's Union,* 993 F.2d 357, 360 (3d Cir.1993) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber*

---

1. The District Court had federal–question jurisdiction pursuant to 28 U.S.C. § 1331 because the petition to vacate the arbitration award was filed under the Federal Arbitration Act, 9 U.S.C. § 9. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 following the District Court's final order dismissing Hruban's petition on April 20, 2001.

*Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). *See also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

Under the standard of review we are bound to follow, Hruban fails to establish any grounds for vacatur.[2] However, Hruban urges this Court to "change the standard of review." Appellant's Br. at 60. Hruban argues for a broader standard to allow "greater judicial involvement in the review process relating to arbitration awards." *Id.* at 59. In light of the relevant precedents of the Supreme Court and this Circuit, we decline to adopt the broader standard of review Hruban advocates. We affirm the District Court's decision and sustain the arbitrators' award to Steinman.

---

[2]. Hruban contends that he was merely a passive investor, and not an "employer" under the WPCL. It is clear that the WPCL requires "some indication that [the defendant] exercised a policy–making function in the company and/or an active role in the corporation's decision making process." *Tyler v. O'Neill,* 994 F.Supp. 603, 613 (E.D.Pa.1998), *aff'd,* 189 F.3d 465 (3d Cir.1999), *cert. denied,* 528 U.S. 1137, 120 S.Ct. 981, 145 L.Ed.2d 932 (2000). A number of facts show that Hruban exercised a policy–making function in LMP and played an active role in the corporation's decision making process, and that he was not, as he contends, simply a passive investor. First, Hruban signed the LLC Operating Agreement, which was filed when LMP became a limited liability company, in his individual capacity (as one of its two "members") and *not* as a representative for Beemac. App. at 52. The Agreement defines Hruban as an "investing member" and indicates that "the Membersm acting as a group, have sole authority to manage the Company." App. at 52, 60. This appears to vest managerial authority in the two "members," Hruban and Parrish.

In addition, Hruban met with Steinman around the time Steinman was negotiating his employment contract. *See* App. at 670-71, 1204. Hruban gave a lecture on trading to LMP's traders. *See* App. at 688. Hruban frequently discussed business over the telephone with Parrish, the only other managing member of the company. The evidence included records of nearly 2000 minutes of phone conversations between Hruban and Parrish between mid–January and mid–November 1998 and testimony of LMP employee that Hruban and Parrish talked at least once a day about LMP business. *See* Appellee's Br. at 34–35. Hruban monitored LMP's accounts on the firms computer system. *See* App. at 1605. His familiarity with the details of the risk profiles of each of the LMP traders is highlighted in his e–mail correspondence with Steinman. *See* App at 1685–93.

Hruban downplays his participation in the management of LMP, emphasizing that Parrish was the person who was actually running the firm. Nevertheless, based on Hruban's formal position as a manager in LMP and the existence of at least some evidence that he participated in the policy–making decisions of the firm, we cannot say that the arbitration panel's conclusion that he was an "employer" within the meaning of the WPCL was "completely irrational."

With regard to whether Steinman was an "employee" within the meaning of the WPCL, we also must defer to the arbitration panel's conclusion. Although we are troubled by the fact that Steinman called himself an independent contractor for tax purposes and now wants to be treated as an employee for the purpose of the WPCL, it is unclear that this is prohibited under the WPCL. *See Bunnion v. Consolidated Rail Corp.,* 1998 U.S. Dist. Lexis 219, 1998 WL 32715 (E.D.Pa.1998), *aff'd sub nom. Bennett v. Consol. Matched Sav. Plan Admin. Comm.,* 168 F.3d 671 (3d Cir.1999). The reliance of the arbitrators on this opinion cannot be said to be irrational. Moreover, Steinman has adduced sufficient evidence that Hruban was an employee that we cannot call the panel's conclusion "completely irrational" on factual grounds.